## Wytheville.

### SOUTHERN RAILWAY CO. v. COOPER.

#### JUNE 14, 1900.

1. DEMURRER TO EVIDENCE—*Motion to Exclude or Strike Out Evidence.*— The only mode of taking away from the jury the determination of the weight to be given to evidence is by demurring. A motion to exclude or strike out applies only to irrelevant or inadmissible evidence.

2. RAILROADS—*Crossing—Whistle.*—Where a statute imposes upon a railroad company the duty of sounding the whistle on its locomotive engines approaching a crossing of a highway for the purpose of preventing a collision with travellers on the highway, or frightening their teams, and the company fails to perform that duty, it is negligence, for the consequences of which the company is liable.

3. RAILROADS—*Frightened Horses—Necessary Noise—Whistle.*—A railroad company is not liable for injuries received from horses becoming frightened upon a highway at the mere sight of its trains, or the noises necessarily incident to the running of the train and the operation of the road. Nor is it liable for failure to sound its whistle at a point where it is forbidden to do so either by statute or an ordinance of a municipal corporation.

4. RAILROADS — *Signals — Bells — Judicial Notice—Frightened Horses.*— Bells are used on locomotives to lessen the danger to travellers on a street or highway of a collision with an engine crossing the same, and courts will take judicial notice of this fact, but they are not intended or useful in warning persons to keep at such distance from the track of the company as will prevent their horses from becoming frightened at a passing engine.

Error to a judgment of the Corporation Court of the city of Danville, rendered January 31, 1899, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

NOTE BY THE REPORTER.—Judge Riely was not present when this opinion was delivered, but was present at the argument, participated in the conference, and concurred in the opinion after it was prepared.

The opinion states the case.

*Blackford, Horsley & Blackford,* for the plaintiff in error.

*Peatross & Harris,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The defendant in error, George K. Cooper, sued the Southern Railway Company for injuries alleged to have been sustained by him by reason of the negligence of the defendant company under the following circumstances:

Henry street crosses the Southern railway near the northern boundary of that portion of the city of Danville known as North Danville, and is a part of the road leading from Danville to the county of Henry. After leaving the more populous portion of North Danville, the street crosses what is known as the Still-House Branch, and then, rising a considerable hill, something over a hundred yards, crosses the Southern railway at what is known as the Henry-street crossing. After leaving the Still-House Branch going up the hill, there is a space of about 150 feet upon the right of the street, along which a traveller in a buggy can see an engine or train coming from the north upon the Southern railway. Part of this space has some trees upon it, but the view of an approaching train is not thereby obstructed, and the rest of the distance up to a wood-yard is open, and the view of an approaching train is in nowise cut off. At a little over one hundred feet from Henry-street crossing there was at the time of this accident a wood-yard between the street and the railway, with a fence around it, which, with other barriers, it is claimed, obstructed the view of the railway up to within a short distance of the crossing. On the afternoon of May 19, 1898, defendant in error with a friend was travelling northward on Henry street in a one-horse buggy. They had crossed the Still-House Branch, and had commenced to ascend the grade

towards the Henry-street crossing. They both say they were looking out for a passing engine in order to avoid a collision therewith at the crossing, one looking up and the other down the railway track, but saw none, and heard none. Henry street is fifty feet broad, and when the horse's head was about the gate to the wood-yard, a yard engine of the plaintiff in error, which was moving down grade, at a speed variously estimated at from ten to fifteen miles an hour, southward toward the depot in Danville, as smoothly and noiselessly as an engine could be run, crossed Henry street in front of the defendant in error. As soon as he became aware of the approach of the engine, defendant in error, who was driving, thinking, as he says, the horse was likely to get scared at the engine, turned him so as to get him into the wood-yard and keep him out of the view of the engine until he could control him, and, in order to get him into the wood-yard, he backed the horse down the hill, pulling him to the right for the purpose of going through the gate. While in the act of doing this, the horse became unmanageable, the buggy was overturned, throwing its occupants out, and the horse ran off, whereby defendant in error received the injuries for which he was awarded in the court below $1,000 damages.

It further appears that the persons on the engine saw the buggy and defendant in error and his companion going up the grade towards Henry-street crossing, at a distance too far from the crossing to make a collision with the engine possible, and a person examined as a witness on behalf of defendant in error was in the wood-yard, and also saw the men in their buggy going up the hill towards the crossing, taking particular notice of the horse, as defendant in error had proposed to sell it to him, and all testify that the horse was going quietly along the street, at a distance from the crossing of about fifty-five feet when the engine passed.

The statute in force in Virginia providing for signals at crossings and requiring every locomotive engine to carry a bell,

expressly exempts signals by whistling within the limits of an incorporated town or city, and in Danville under the ordinance of the town, a whistle cannot be blown. In this case, according to evidence introduced by defendant in error, the whistle on the engine was not blown nor the bell rung.

After the evidence for both plaintiff and defendant had been introduced, plaintiff in error moved the court to strike out all the evidence introduced by defendant in error, on the ground that, admitting every allegation therein proved to be true, it made no case against it, which motion was overruled, and an exception was taken, which constitutes the first assignment of error relied on here.

The exception is not well taken. Under our practice, the only mode of taking away from the jury the determination of the weight to be given to evidence is by demurring to it. A motion to strike out is not equivalent to a demurrer to the evidence, as counsel for plaintiff in error contends, citing *Fowlkes* v. *Southern Rwy. Co.*, 96 Va. 742. The decision in that case only recognized and applied the universally admitted law that the court determines whether evidence is admissible or not, and, in the exercise of this function, admits or excludes it, on objection to it when offered, or on motion to strike it out, if it has been improperly admitted.

The defendant in error neither alleges in his declaration nor offers proof of any negligent act of plaintiff in error done in the immediate vicinity of the highway upon which he was travelling as causing his injuries, but relies merely upon the omission of plaintiff in error to give him signals or warnings of the approach of the engine at which his horse took fright, without a suggestion as to what signals or warnings should have been given him, other than the blowing of the whistle or ringing the bell. He states that he lived in North Danville; was familiar with the Henry-street crossing and its surroundings; that he regarded his horse as gentle and safe; had driven it up to street cars, and

that on the occasion of his injury, he and his companion were only looking out to avoid a collision with an engine on the crossing they were approaching. The question presented, therefore, is, what duty did plaintiff in error, under the circumstances, owe to defendant in error and fail to perform?

This may be disposed of in connection with the assignment of error to the rulings of the court below in refusing instructions Nos. 1, 3, 4, and 6, asked for by plaintiff in error, and in modifying its eighth instruction. They are as follows:

" No. 1. The court instructs the jury that under the law of Virginia, Danville being an incorporated city, the defendant had the right to omit the sounding of the whistle in approaching the Henry-street crossing, where the accident occurred. And if the jury believe from the evidence that the accident was caused by the failure to sound the whistle, the defendant was not negligent, and they must find for the defendant."

" No. 3. The court instructs the jury that the defendant had the right to presume that the less noise made by the train in approaching the crossing, the less danger there was of frightening horses near the track, and while the defendant would be liable for injuries caused by frightening horses by unnecessary noise, it is not liable for injuries caused by frightening horses too far off for collision, when it makes as little noise as possible."

" No. 4. The court further instructs the jury that operating railroads by steam being lawful, the defendant had the right to run its engines and trains where they can be seen by man and beast, the right to make the noises incident to the movement and working of its engines, and the defendant is not liable for injuries occasioned by a horse, when being driven on the highway, taking fright at the sight of an engine, nor at the noises usually made by a running engine."

" No. 6. The court further instructs the jury that the defendant's employees in charge of the engine had a right to presume

that horses near the track would not be frightened by an approaching engine, and it was not their duty to stop the engine, or to give any signals when the horse was seen approaching the crossing too far off for a collision, and giving no indications of fright when seen by some of the employees on the engine."

"No. 8. The court instructs the jury that if they believe from the evidence in this case that an ordinance of the city of Danville prohibited the sounding of whistles upon the engine, which is charged to have caused the accident in question at the Henry-street crossing, or at the point designated at the whistling post, then the failure to blow such whistle was not negligence."

The court struck out of Instruction 8 the words "failure to blow such whistle was not negligence," and inserted in their stead "defendant was not required to sound the whistle as it approached the crossing."

Where the statute imposes upon a railroad company the duty of sounding the whistle on its locomotive engines approaching a crossing of a highway for the purpose of preventing a collision with travellers on the highway or frightening their teams, and the railroad company fails to perform that duty, it is negligence for the results of which the company is liable.

In *Southern Railway Co.* v. *Torian*, 95 Va. 453, it was said that a railroad company is liable for injuries inflicted in consequence of sounding its whistle in a careless or reckless manner, or at an improper time. This is unquestionably settled law, and it is equally as well settled that where the violation of an ordinance or a statute is the proximate cause of an injury, the wrong-doer is liable therefor. 2 Elliott on Railroads, sec. 711; *Petersburg R. Co.* v. *Hite*, 81 Va. 771. If, therefore, it is unlawful to sound the whistle on an engine approaching a highway crossing, it cannot, either upon reason or authority, be deemed negligence to omit doing so. In *Petersburg R. Co.* v.

*Hite, supra,* it was said: " Undoubtedly railroad companies have the right to run engines and cars over their own roads and in their yards, and, as a consequence, they have the right to make the usual and reasonable noises necessarily incident to a running train; and for the making of such noises, therefore, where they are neither negligently nor unnecessarily made, no cause of action will arise, although animals may be frightened thereby and injury ensue."

"A railroad company is not liable for injuries received from horses becoming frightened upon a highway at the mere sight of its trains, or the noises necessarily incident to the running of the train, and the operation of the road." 3 Elliott on Railroads, sec. 1264, and cases cited. Among the many authorities there cited is *Flint* v. *N. & W. R. Co.,* 110 Mass. 222. In that case the plaintiff was injured by his horse becoming frightened by the cars on the defendant's railroad. It appeared that the railroad crossed the highway on which the plaintiff was travelling; that the horse became frightened when about five rods from the crossing, by the approach of two cars, about ten rods therefrom; that the cars were coming on a down grade by the force of gravitation, at the rate of eight or ten miles an hour; and that no signals were given of their approach. Held, that these facts would not warrant the jury in returning a verdict for the plaintiff.

In *Favor* v. *B. & L. R. Co.,* 114 Mass. 352, the court lays down the broad doctrine that a railroad company has the right to do lawful acts upon its own premises, and is not responsible for injurious consequences that may arise from such acts, unless the acts are negligently and improperly done, but, as the court adds: " If the defendant in this case had done some negligent act in the vicinity of the highway, calculated to endanger the safety of travellers passing over it with horses, a very different question would be presented." That is to say, that where the

railroad is using its property in a lawful way, doing no negligent act in the immediate vicinity of a highway calculated to endanger the safety of travellers passing over it with horses; and an injury is sustained by reason of horses on the highway becoming frightened by an engine or train crossing it, the railroad company is not liable therefor. *L. & N. R. Co.* v. *Schmidt,* 134 Ind. 16; 1 Thompson on Neg., sec. 15; *Howard* v. *N. F. R. R.,* 156 Mass. 159; 2 Woods on Railroads, sec. 324.

It is unquestionably one of the objects of an ordinance of a city, prohibiting the sounding of the whistle on locomotive engines within the limits of the city, to lessen the danger of teams on the streets becoming frightened at passing engines or trains. And while it is a matter of common observation, of which courts will take judicial notice, as counsel for defendant in error contends, that bells are used on locomotive engines to lessen the danger to travellers on a street or highway of a collision with an engine crossing the street or highway, can it be said that they are intended or useful in warning persons on the street or highway that they may keep such a distance from the crossing as will prevent their horses from becoming frightened at a passing engine? We think not.

In construing a statute of the State of Rhode Island requiring railroad companies to ring the bell upon their locomotive engines for a distance, at least, of eighty rods from the place where the railroad crossed any turnpike or highway upon the same level with the railroad, the Supreme Court of that State held, that the statute was only intended to lessen the danger of a collision of the engine or train with individuals, or their horses, carriages or teams on the crossing, and not intended or useful to warn people elsewhere. *O'Donnell* v. *The P. & W. R. Co.,* 6 R. I. 211.

Nor is it the purpose of gates at a street crossing to warn persons travelling the street to keep at a sufficient distance to prevent their horses from becoming frightened by an engine or

train, as they are only lowered to shut street travellers off
the crossing until an approaching engine or train passes. As
was said by this court in *Richmond, &c. Rwy. Co.* v. *Richmond,
&c. R. Co.*, 96 Va. 673: It is a matter of common knowledge
that the tendency of gates and a gate-keeper at railroad crossings
is to promote safety; but their utility as a warning to travellers
to keep at a safe distance to prevent their horses becoming
frightened does not appear in the case at bar, nor is it a matter
of common knowledge. Had there been a watchman at Henry-
street crossing, it could not have been reasonably expected of
him to stop defendant in error at a greater distance from the
crossing than fifty-five feet in order to prevent his horse from
taking fright at the passing engine. According to his own
statement, he was driving his horse quietly along the street too
far away from the crossing to make a collision with the engine
possible. Had the man in charge of the engine, seeing defend-
ant in error driving his horse quietly towards the crossing, in no
possible danger of a collision, and no noise being made on the
engine other than that incident to a running engine, immediately
proceeded to sound the whistle, at which the horse took fright
and injury to defendant in error ensued, it might have been rea-
sonably claimed that plaintiff in error was guilty of negligence
in recklessly and unnecessarily sounding the engine's whistle.
*Southern Rwy. Co.* v. *Torian, supra.*

Instruction No. 8, as asked for by plaintiff in error, simply
told the jury that if they believed from the evidence that an
ordinance of the city of Danville prohibited the sounding of the
whistle upon the engine, which was charged to have caused the
accident in question, at the Henry-street crossing, or at the point
designated as the whistling post, the failure to blow such whistle
was not negligence. It correctly propounded the law, and
should have been given as asked.

Plaintiff in error's Instruction No. 1, refused, was to the same
effect, and should have been given.

It follows from what has already been said, that we are further of opinion that plaintiff in error's instructions 3, 4, and 6 correctly propounded the law, and should have been given.

Without these instructions to the jury, qualifying Instruction No. 1, given for defendant in error, that instruction was plainly erroneous, in that it left the jury free to find a verdict for defendant in error on the sole ground that plaintiff in error omitted to sound the whistle on the engine when it approached the Henry-street crossing.

The remaining assignments of error will not be considered, as they are either without merit, or are not likely to arise on another trial.

The judgment of the Corporation Court must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, to be had in accordance with this opinion.

*Reversed.*