# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LANE BROTHERS COMPANY V. BARNARD'S ADMINISTRATOR.

### January 12, 1911.

Absent, Harrison, J.

1. HIGHWAYS—*Road Machinery—Noises—Fright of Horses.*—A defendant engaged in road improvement who has located his machinery in a public road, as he had a lawful right to do, and is operating it according to the methods usually pursued in similar work, s not liable for an injury inflicted on a traveller on the road by reason of his horse taking fright at the machinery, or the noises made by it. Though machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability.

2. NEGLIGENCE—*Doubtful Cause of Injury.*—If it is just as probable that the plaintiff's injury resulted from the noise made by a pop-valve lawfully in use on defendant's engine as from the negligent escape of steam therefrom there can be no recovery.

3. NEGLIGENCE—*Concurrence of Damage and Wrong.*—Injury alone is not sufficient to support an action arising from the alleged negligence of the defendant. There must be a concurrence of wrong and injury. If a person does an act which is not unlawful in itself, he cannot be made liable in damages for the resulting injury, unless he does the act at a time or in a manner, or under circumstances which will render him chargeable with a want of proper regard for the rights of others.

4. HIGHWAYS—*Use of Machinery—Care Required—Usage.*—It is incumbent on a person using or operating machinery located in or near a public highway, to take proper precautions against the dangerous operations and conditions attending the use of the machinery, in order to prevent injury to a traveller on the highway, but the unbending test of negligence in methods, machinery and appliances is the ordinary usage of business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The rule in cases of this kind is the same, as in cases of master and servant.

Error to a judgment of the Corporation Court of the city of Lynchburg in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Harrison & Long* and *F. C. Moon,* for the plaintiff in error.

*Lee & Kemp,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This writ of error brings under review a verdict and judgment in the Corporation Court of the city of Lynchburg for $1,500, in an action brought by James S. Barnard's administrator against Lane Brothers Company for the recovery of damages for the death of plaintiff's intestate, caused, it is alleged, by the negligence of the defendant.

The substance of the charge of negligence made in the declaration is that the automatic safety valve on defendant's steam engine, at a point where defendant, on the Boonesboro road, in the county of Campbell, near the city of Lynchburg, had placed certain road machinery for the purpose of macadamizing the road, under a contract with the county, was so adjusted as to discharge steam in sudden streams and clouds horizontally or laterally across, over, into and upon said road, and from five to six feet above it; that these discharges of steam and hot mist and water were of an extraordinary, unusual and frightening character, such as naturally tended and were calculated to frighten, terrify and cause to become uncontrollable horses of ordinary gentleness and training, and thereby liable to cause injury and death to the travelling public; that the said automatic safety or pop-valve and pipe

attachments were so recklessly and carelessly maintained and operated that the steam, hot mist, etc., which said safety or pop-valve from time to time ejected, emitted, discharged, etc., were ejected, emitted, etc., in sudden streams and clouds over and upon said road as aforesaid; that the hissing, whistling and penetrating noises and sharp reports produced by the operations of said safety or pop-valve attachments in the ejection and release of steam were of an extraordinary, unusual and frightful appearance, etc., and naturally tended and were calculated to frighten, terrify, etc., horses passing along said highway, all of which the defendant, its officers, etc., knew, or by exercising ordinary care would have known; and that the defendant also recklessly, negligently and carelessly failed to warn or take any precautions to guard the public generally and especially the said James S. Barnard, in so travelling along and over said public road and highway, of or against the dangerous condition aforesaid, which the defendant had recklessly created and maintained.

The accident to plaintiff's intestate is described in the declaration as follows: The deceased was, on the 8th day of July, 1908, travelling along, over and upon said public road and highway, as he had a right to do, at or near the place where the defendant had placed, located and was maintaining its said steam boiler, engine and said safety or pop-valve and pipe attachments, and was exercising due care on his part, and was occupying a cart and driving a horse hitched to and drawing said cart, which horse was of ordinary gentleness and training, and was passing or about to pass by said engine and boiler, and upon the open passageway of said public road and highway, when there was suddenly ejected, discharged and released from defendant's said steam boiler and engine, by means of its said automatic, safety or pop-valve and pipe attachments in, over and laterally and horizontally across and over said road and highway, a sudden stream, etc., of steam in front of, at or nearly at, the face, head and fore-

parts of said horse, so that the head and body of said horse were partially enveloped in said steam, etc.; and at the same time there were produced by said safety or pop-valve, etc., and the escaping steam, hissing and whistling noises and a sharp report near the said horse, which ejected steam * * * in close proximity to said horse, and which said noises and said steam in like proximity to said horse, were of such an unusual and extraordinary appearance and character as naturally tended and were well and reasonably calculated to frighten and terrify and render uncontrollable said horse * * * * and did frighten and terrify said horse so that said horse plunged, reared and became uncontrollable, whereby and by reason thereof, the said James S. Barnard was, at and near said place, violently precipitated and hurled to the ground and upon said roadway, and thereby sustained injuries * * * * from which he afterwards, to-wit, on the 31st day of July, 1909, died.

The defendant, under its plea of the general issue, claimed that it was in lawful occupation of the road with its machinery, and was not responsible for the noises and other occurrences usual in the operation of such machinery; that it was guilty of no negligence; and that except for the negligence of the plaintiff's intestate in attempting to drive by the machinery without taking any precautions for his own safety the accident complained of would not have occurred.

The record before us presents no question for our determination other than that arising from the refusal of the trial court to set aside the verdict of the jury because the same was contrary to the law and the evidence.

Viewing the evidence as upon a demurer thereto, the facts and circumstances attending the injuries sustained by plaintiff's intestate were as follows: Where the accident occurred the public road spoken of above was thirty-seven feet wide from fence to fence, at the western or Boonesboro end, and thirty-three feet wide at the eastern or Lynchburg end, with

drains on either side having a depth of about eighteen inches below the middle of the road, and the machinery of the defendant was, by the authority and with the approval of the authorities of the county of Campbell and of the Assistant State Highway Commissioner, placed in the road near the fence on the south side, leaving a space or passageway for the public twenty-six feet in width between the machinery and the fence on the north side. The machinery consisted of a crusher bin at the east end nearest Lynchburg, a crusher immediately in the rear of the crusher bin, and a steam engine at the west or Boonesboro end, standing in the drain immediately behind the crusher. The boiler of the engine, which was parallel with the center of the road, was surmounted by a dome seventeen and one-half inches above the top of the boiler, and the top of the dome was eight feet above the ground. To the dome, six inches below the top, the safety or pop-valve was attached, on the side away from the road, but four inches in front of a point midway between the front and back of the dome. It projected five or six inches from the dome, and the outer end, which was bent at right angles, was inclined upwards and forward at an angle of about forty-five degrees, so that the steam passing through the openings around the rim of the valve, was discharged upwards and diagonally across the top of the boiler, a little to the left or north of the top of the smoke-stack and towards the roadway, over which, if not deflected or evaporated, it would pass at a height estimated by defendant's witnesses at from twenty-five to thirty feet, but by two of plaintiff's witnesses at from five to six feet, although the valve was seven and one-half feet above the ground and had an upward inclination of about forty-five degrees, whereby, in the absence of disturbing cause, it would have been a physical impossibility for the steam to have passed over the roadway at a height of only five or six feet.

Of the twenty-one witnesses introduced for the plaintiff,

including himself and one other, whose testimony was excluded, we need only to deal with six of them, as it is not controverted that plaintiff's intestate died as the result of the injuries sustained in this accident, nor that the horse he was driving at the time was of ordinary gentleness and training.

Of the six witnesses referred to, only one witnessed the accident, and the other five were introduced to show that the machinery operated was of such a character as to frighten horses of ordinary gentleness and training, only four of whom had seen or heard the pop-valve go off. W. H. Harrison, the eye-witness, stated that he was employed by the defendant, and when the accident occurred was running the steam roller about two hundred yards west of the machinery. He was on the ground oiling his machinery when the plaintiff's intestate passed by on the opposite side, which he seemed to do without trouble. After he passed, the witness got up on the roller and started in the same direction, following him. The road was perfectly straight, and deceased and machinery ahead, which was not then running, were in full view. Deceased was driving about five or six miles an hour, and just as he got opposite the crusher engine the pop-valve on the engine went off, and the horse immediately shied and the wheel of the cart in which deceased was seated struck the wheel of a wagon standing on the opposite side of the road, and deceased was thrown out. The horse appeared to be under control and showed no sign of fright until the pop-valve went off, the steam from which went up in the air and diagonally across the road, and with the engine located as it was the steam from the pop-valve would be thrown "somewhat across the road, diagonally across the road," and ordinarily about half-way across, but "there is no certainty about that." This witness seeing the accident from a point behind the deceased and two hundred yards distant, could not have seen, nor did he undertake to say, whether the steam passed in front of the

horse, or so that it might have been seen by the horse. According to his statement, the horse shied just as it got opposite the engine and immediately upon the discharge of the pop-valve, the sound of which was heard by the witness at a distance of two hundred yards, the indication being that the sound was the occasion of the horse's fright.

Burwell Anderson, introduced by defendant, and the only other witness of the accident who observed the discharge of the pop-valve, stated that as the horse was approaching the engine the valve popped off, and the steam, apparently blown by the wind, seemed to drift towards the face of the horse, but it seemed to abate and then the valve poped off again with a loud noise, and that seemed to frighten the horse, and it shied, jumping to one side as the valve discharged a second time. "It popped off with a loud noise, and that seemed to frighten the horse."

It seems clear, therefore, from this evidence, that the horse was frightened by the noise of the discharge of the valve, rather than by the appearance of the steam. At most, it leaves it conjectural whether there was any connection between the accident and the cause alleged in the declaration, to-wit: that the horse was frightened, and the accident caused, by the discharge of the steam across the roadway. Be that, however, as it may, it appears from the evidence that the machinery used by the defendant was such as is used in road building all over the State. It was located at the place of this accident by lawful authority, and the work was conducted according to methods usually pursued in similar work elsewhere. The safety valve, which was used for the safety of those working around the engine. was attached at the place fixed for it at the factory, its use being that if the engineer fails to keep a lookout as to the amount of steam he is generating, the valve may open automatically by reason of the pressure and permit the excessive steam to escape and thereby

avoid the bursting of the boiler. It further appears that horses of ordinary gentleness and training would usually shy, more or less, when passing this machinery, especially when the steam was escaping, one of plaintiff's witnesses saying: "Any horse that had any life at all, passing an obstruction like that in the road, would move from one side to the other. I would not call that shying, if I was going to buy him for myself." It further appears that the deceased, just before this accident happened to him, said to plaintiff's witness just quoted from, that the horse he was driving would shy. He (deceased) had passed defendant's machinery that morning when the employees assisted him, as they had been instructed to do whenever their services were needed by any one travelling the road, but when deceased returned in the afternoon he said to the same witness that he didn't think he would have any trouble going back, and then drove off down the road by the machinery, at a speed of not less than five or six miles an hour, so that when his horse shied to the side of the road by reason of the pop-valve going off, his vehicle struck the wheel of the wagon of Burwell Anderson, standing on the side of the road where Anderson had driven it in order to clear the road for deceased when he saw him coming. It nowhere appears that deceased would have been unable to control his horse had not his vehicle collided with Anderson's wagon, which was where it was without any fault of the defendant.

It is contended for the plaintiff in the argument, that the defendant's negligence consisted not only in establishing and maintaining its machinery on the side of the public road, but in attaching the pop-valve to its engine so that the steam would be ejected into or over the road, instead of from the road; or in not employing some device or equipment which would have kept the steam out of the road entirely.

We have seen that the defendant had located its machinery,

as it had the lawful right to do; that it was operated according to the methods usually pursued in similar work; and that the evidence leaves in doubt whether the horse of the deceased was frightened by the appearance of steam which necessarily escapes from steam engines, or by the noise of the discharge of the pop-valve; so that, viewing the evidence most favorably to the plaintiff, it is just as probable that the horse was frightened by the one cause as the other: but it neither shows that the noise made by the discharge of the pop-valve would have, if it had been attached so as to discharge from instead of towards the road, been less calculated to frighten horses travelling the road, nor is it shown that the noise from the pop-valve was not such as is usual in the operation of such machinery. On the contrary, the evidence shows, without contradiction, that the engine in question usually has the escape or pop-valve attachment, that the safety or pop-valve attachment is not only usual, but a necessary equipment for the safety of those working about the engine, instead of having to rely upon the treacherous memory of the engineman to let off the steam when the pressure gets to the danger point; and that such engines are so made, and the noises made by defendant's machinery were such as is usual in the operation of such machinery.

Though machinery, and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability; therefore, the defendant in this case being in lawful occupation of the road with its machinery, and using it for a lawful purpose, was not responsible for the appearance of the machinery, nor for the noise or other occurrences usual in its operation. *Southern Ry. Co.* v. *Cooper,* 98 Va. 299, 36 S. E. 388.

"Injury alone is not sufficient to support an action arising from the alleged negligence of the defendant. There must be a concurrence of wrong and injury. If a person does an act

which is not unlawful in itself, he cannot be made liable in damages for the resulting injury, unless he does the act at a time or in a manner, or under circumstances which will render him chargeable with a want of proper regard for the rights of others." *N. & W. Ry. Co.* v. *Gee,* 104 Va. 806, 52 S. E. 572, 3 L. R. A. (N. S.) 111.

In *Piollet* v. *Simmons,* 106 Penn. St., 51 Am. Rep. 496, cited in the last named case, the horse of a traveller took fright at a small barrel mounted on wheels, which the owners of the property through which the highway ran were using in whitewashing their fences, and which they moved from time to time as the work progressed. They left it standing covered over with a white cloth, and having a shovel projecting a short distance above the top, all day Sunday on one side of the beaten highway track; and in an action for damages thus caused, it was held, that unless there was something of an unusual or extraordinary character in the structure or appearance of the apparatus, which would naturally tend to frighten horses of ordinary gentleness and training, it was not negligence to use it, although some horses might and did take fright at seeing it.

It is true that it is incumbent on a person or corporation using and operating machinery located in or by the side of a public road or highway, to take proper precautions against the dangerous operations and conditions attending the use of the machinery, in order to prevent injury to a traveller on the highway; but the rule as to the test of negligence in an action brought to recover damages for an injury inflicted under such conditions is that the defendant is liable for the consequences, not of danger, but of negligence; "and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the

conduct of the average prudent man." *Norfolk, &c. Co.* v. *Ellington's Admr.*, 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117, and authorities there cited. That the rule is the same in a case like this as in master and servant cases, see *Norfolk, &c. Trac. Co.* v. *Daily's Admr., ante* p. 665, 69 S. E. 963, just decided by this court.

We are of opinion that the evidence in this case is insufficient to sustain the finding of the jury; therefore, the judgment of the trial court complained of must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*