## East Tennessee Telephone Company v. Parsons.

### Same v. Same.

(Decided September 25, 1913).

### Appeals from Mercer Circuit Court.

1. Highways—Obstruction of—Objects that will Frighten Horses— Rights of Telephone Company.—A telephone company that had

the right to erect poles and string its wires along the right of way of a public road may put coils of wire to be used in stringing its line on the right of way of the road without subjecting itself to liability on account of horses being frightened thereby.

2. Highways—All Parts of Set Aside for Public Use.—All parts of a public road are set apart for public use, and it is actionable negligence to unlawfully or without right place any nuisance or obstruction therein.

3. Highways—Nuisance in Right of Way Outside of Traveled Part.—An unlawful or unauthorized obstruction or nuisance on the right of way of a public road, although it may be outside the traveled part, may be the basis of an action, if it is calculated to frighten a reasonably gentle horse.

4. Highways—Difference between Liability for Placing Obstruction in the Traveled Part and Outside of It.—It is not permissible, for persons not authorized so to do, to place any sort of obstacle in the traveled part of the road that will obstruct or interfere with its use, while in many instances it is legitimate to place and permit to remain on the side of the road, outside of the traveled part, objects which, if placed in the traveled part, would constitute an obstruction.

5. Highways—Difference Between the Rights and Liabilities of Those Who Have the Right to Use the Right of Way and Those Who Have Not.—Whether liability attaches to a person who places objects and things on the side of a road depends largely on whether or not he had the right to do so rather than on the character or shape or kind of object that was placed, as a person having the right to do so may with free om from liability place many things on the right of way that a person not having such right could not safely do.

6. Highways—Objects Calculated to Frighten Horses—Rule.—The mere fact that an object on the side of a road is calculated to frighten a reasonably gentle horse is not the sole standard by which the liability of the party placing it there is to be measured in an action by a person injured by the fright of his horse; nor does the fact that the objects placed on the side of the road are new and unusual things in the conduct of the business of the persons having the right to place them, increase their liability.

7. Highways—Objects That Will Frighten Horses—Question for Jury.—The general rule is that it is for the jury to say whether the thing complained of was calculated to frighten a reasonably gentle horse, but this does not mean that every time a horse becomes frightened at an object rightfully placed on the side of the road that the question must be left to the jury. It is only the right of the jury to pass on questions like this when there may be reasonable grounds for difference of opinion as to whether the object was rightfully placed on the road and from its size and appearance calculated to frighten horses.

8. Highways—Reasonable Time in Which Telephone Company May Use Wire Placed on Side of Road.—Where a telephone company, in the erection of a new line, placed coils of wire on the side

of the road, to be used in erecting a line, it might leave them there for several days without subjecting itself to liability on the ground that they were there an unreasonable length of time.

E. H. GAITHER for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing one and affirming the other.

The horse drawing the vehicle in which the appellee, Mrs. Sarah Parsons, was riding on one of the public roads of Mercer County, became suddenly frightened at coils of telephone wire lying on the ground in the right of way but outside of the traveled part of the road, and turning sharply around, upset the vehicle. When the vehicle was overturned, Mrs. Parsons, who was thrown out, received severe injuries, and to recover damages therefor brought suit against the telephone company, which resulted in a verdict in her favor for a substantial sum.

One of these appeals is prosecuted by the company to obtain a reversal of the judgment against it, and the other appeal is prosecuted from a judgment of the Mercer Circuit Court dismissing a petition of the telephone company in which it sought a new trial in the negligence case upon the ground of newly discovered evidence. As we have reached the conclusion that the judgment in the negligence case must be reversed, it will not be neccessary to again refer to the suit seeking a new trial, except to say that the petition did not state sufficient reasons to authorize the granting of a new trial, and, therefore, the judgment of the lower court dismissing it was correct.

There is no substantial issue made by the evidence in the negligence case, and the facts may be briefly stated as follows: The horse drawing the vehicle was an ordinarily gentle horse, and at least two or three times shortly before the day on which the accident occurred, had been driven by the telephone wire at which it scared without being frightened by it. The telephone company owned and operated a telephone line along the road on which Mrs. Parsons was traveling, the poles being in the right of way but outside of the traveled part of the road. Desiring to put in a new line, it dis-

tributed along the road coils of wire to be used in erecting this line. The wire at which the horse frightened consisted of two coils placed one on top of the other, each of the coils being about three inches high, both of them together being about six inches in height, the diameter of the coils being probably 24 inches. The wire was new and bright colored, such as is usually used by telephone companies, and the coils were located some two or three feet outside of the traveled way of the road but on the right of way of the road and between the traveled part and the fence on the line between the road and the adjoining land owner, and had been there several days before the accident. When the wire was distributed along the line, the company commenced to put up the string in which it was to be used, and the work, although in progress, had not reached the point where the accident occurred, and hence this wire had not been moved from the place it was first put.

We may assume, as there is no issue to the contrary, that the telephone company had the legal right to erect its poles and wires on the right of way of this road, and this right of course included the right to maintain the telephone lines in repair and to string new lines of wire on its poles and to distribute wire along the road for this purpose. We may further assume that the horse being driven to the vehicle was a reasonably gentle horse and that Mrs. Parsons was not guilty of any negligence that contributed to her injury.

With these facts assumed, as they may well be from the evidence, it is the contention of counsel for Mrs. Parsons that it was a question for the jury to say whether the wire, located as it was, was such an obstruction in the highway as was ordinarily calculated to frighten a reasonably gentle horse, and that when the jury was properly instructed, as it was, that if "they believed from the evidence that the coils of telephone wire described in the evidence were placed or left on the right of way of the turnpike at the time and place mentioned in the evidence, and allowed to remain an unreasonable length of time, and that said coils of wire so placed and left were ordinarily calculated to frighten and make unmanageable a reasonably gentle horse when driven along said pike by one exercising ordinary care, and that while plaintiff was being driven along said pike in a surrey drawn by a reasonably gentle horse, said horse became frightened at said coils of wire so

placed and left, and thus became unmanageable, causing said horse to turn suddenly around and overturn said surrey, thereby throwing plaintiff out upon the ground and stones so as to injure her, the law is for the plaintiff, and you will so find," the court should not interfere with the finding upon the question of fact submitted in the instructions.

On the other hand, the argument in behalf of the telephone company is, that in placing and leaving these coils of telephone wire in the manner and under the circumstances stated, the company was not guilty of actionable negligence, although they may have frightened a reasonably gentle horse, and, therefore, the jury should have been directed to return a verdict in its favor.

Upon the facts shown by the record there are two questions presented for our consideration. First, did the placing of the wire in the manner and for the purpose stated constitute a nuisance or an obstruction of the highway within the meaning of the rule of law that holds persons liable for placing or maintaining a nuisance or obstruction in a highway? Second, if the placing of the wire as indicated was not a nuisance or obstruction, did the fact that it was permitted to remain there for several days have the effect of converting what was originally a lawful act into an unlawful one?

There is no disagreement in the authorities that all parts of a public road are set apart for public use, and that it is actionable negligence to unlawfully or without right place any nuisance or obstruction in a highway that interferes with its use by the public, or that results in injury to any traveler rightfully using the road. It is also well settled that an unlawful or unauthorized obstruction or nuisance on the right of way of a public road, although it may be outside the traveled part of the road and so located as not to interfere with ordinary travel, may be the basis of an action if it is calculated to frighten a reasonably gentle horse. There is, however, quite a difference between the liability for placing or maintaining a nuisance or obstruction in the traveled part of the road and placing or maintaining it outside of the traveled part but on the right of way, as it is not permissible for persons not authorized so to do to place any sort of obstacle in the traveled part of a road that will obstruct or interfere with its use; while in many instances it is entirely legitimate to place

and permit to remain on the side of the road outside of the traveled part objects which if placed in the traveled part would constitute an obstruction. For example, abutting property owners and others who have acquired the right to do so may place and maintain for temporary and even permanent purposes many objects and things on the right of way outside of the traveled part of the road, free from liability for obstructing the highway.

It is further manifest that there should be a marked distinction between the rights and liabilities of those who have the right to use the right of way outside of the traveled part for the purpose of placing temporary or permanent objects or obstructions therein and those who have not the right to obstruct in any manner or for any time any part of the road. It also follows that the right to the use of the right of way for purposes other than travel carries with it the right to do many things that a trespasser, or what might be called an intruder, would not have the right to do, and in determining whether or not an object or thing placed in the right of way may be the subject of an action for damages, it is always important to find out whether it was put there by a person having the right to do so, or by a trespasser or intruder. For example, a farmer desiring to build a fence might safely put on the right of way outside of the traveled part the material he intended to use in erecting the fence, and so an abutting property owner might without liability place on the right of way so as not to obstruct the traveled part of the road material to be used in the erection of a building. Likewise telegraph, telephone, electric light and other public service corporations that have secured the right to do so, may place poles, wires, tool boxes and other implements necessary in the construction or repair of their work on the right of way in such a manner as not to interfere with travel. Indeed it is scarcely possible to travel any of the principal roads in the state without seeing frequently on the side of the road in the right of way material and implements being used or intended to be used by abutting property owners or public service corporations. Nor does the mere fact that many or perhaps all of the things so placed in the right of way may be calculated to frighten reasonably gentle horses create any liability on the part of the persons so placing them if the act is otherwise free from negligence.

It may, therefore, be said that whether liability attaches to a person who places objects and things on the side of a road depends largely upon whether or not he had the right to do so, rather than on the character or shape or kind of object that· was placed, as a person who had the right to do so might with complete freedom from liability put an object or thing on the side of the road which, if put there by a person not having the right, would be a nuisance.

It is also very evident, and would seem to necessarily follow from what we have said, that the sole fact that an object on the side of the road is calculated to frighten a reasonably gentle horse is not the standard by which the liability of the party placing it is to be measured in an action by the person who was injured by the fright of the horse. A rule like this would subject to continual apprehension and liability abutting owners and others having the right to place objects on the side of the road, as it is a well known fact that reasonably gentle horses at times become greatly frightened at objects that they see and pass without notice or fear day after day.

It is also manifest that it would not do to say that merely because there was something new or unusual about the appearance of an object placed on the side of the road by some person having the right to do so, that it should be treated as likely to frighten a gentle horse, and that the party placing it subjected himself to liability merely because of the newness or novelty of the thing. Modern inventions and discoveries are daily bringing into practical use many new implements and devices and many new kinds of material, and people are not to be subjected to liability merely because, in the conduct of their business, they use new and unusual things.

It is now a matter of common occurrence to see large bales of bright fencing wire, intended to be used by farmers in the erection of right of way fences, along the side of public roads, but because a horse might become frightened at a bale of wire when he would pass unnoticed a pile of fence rails, furnishes no reason why the farmer using the wire should be subjected to greater liability than the farmer using the fence rails; and so the liability of the owner of an automobile or a motorcycle, who leaves it standing by the side of the road, should not be greater than the liability of the man who

leaves a buggy or a wagon by the side of the road, although one vehicle might frighten horses much more than the other.

This line of reasoning, which we think sound, leads us to the conclusion that the telephone company, having, as it did, the right to erect its poles and string its wires along the right of way, did not incur any liability in placing, as it did, the coils of wire. This wire, although new and bright, and in the right of way of the road, was the kind of wire commonly used by telephone companies, and there was nothing in the size or appearance of these coils to attract unusual attention.

To say that a telephone company in the erection of a new line must be subjected to liability because, in the progress of its work, it finds it indispensable to have coils of wire and other implements and material on the side of the road that may frighten reasonably gentle horses, would be to virtually deny telephone companies the right to carry on, in the ordinary way, their business, or else subject them to unreasonable expense and inconvenience in protecting every tool or implement or other thing that might at some time frighten some person's horse.

It is true, as argued by counsel for Mrs. Parsons, that the general rule in cases like this is, that it is for the jury to say whether the thing complained of was calculated to frighten a reasonably gentle horse, but this does not mean that every time a horse becomes frightened at some object rightfully placed on the side of the road the question must be left to the jury, or that in every case in which the jury find that the object was calculated to frighten a reasonably gentle horse, the judgment must stand. It is only the right of the jury to pass on questions like this when there is reasonable ground for difference of opinion, under all the circumstances, whether the object was lawfully or unlawfully placed where it was and was of such size, shape or appearance as would be reasonably calculated to frighten a horse. A horse might become frightened at any kind of a tool or implement of the simplest kind placed on the side of the road by a person having the right to so place and use it. It is a matter of common knowledge on the part of every person familiar with reasonably gentle horses, and especially old family horses, that they are likely to take fright at any time or place at the most trivial and unexpected things.

Many of them scare every time they go by piles of rock on the side of the road, although they pass them day after day for months; they will at times scare at pieces of paper, planks, ponies, hogs, cattle and other things that they see and associate with day after day, so that no person can tell what a horse will, or will not take fright at; and, therefore, it would be out of the question to say that everything that a horse might scare at would furnish the basis of an action for damages.

In Simons v. Maine Telephone & Telegraph Co., 104 Me., 440, the telephone company, in constructing its line, placed in the street near the sidewalk reels of lead pipe three feet in length and four feet in diameter that frightened a horse being driven by. In holding that the company was not liable the court said:

"Having the right to erect and maintain its poles and string on them its wires and cables where it did in the street, the company had the concomitant right to use suitable appliances therefor and in reasonably needful places. For the work of stringing on the pole the wires and lead pipes enclosing them, some kind of a reel was appropriate and needful, and it needed to be in the street in the line of the poles. There is no suggestion in the evidence that any other kind of a reel, larger, smaller or of different shape or color, would have been less likely to frighten horses, or that it could have been so located as to be still serviceable and less startling to horses. * * * The reel and the lead pipe being otherwise lawfully where and when they were in the street, the mere fact that they were likely to frighten horses unaccustomed to them did not make their presence there unlawful. The consequences of the fright must there, remain where they fell."

In Lane Bros. Co. v. Barnard, 111 Va., 680, 69 S. E., 969, a horse became frightened at an engine being operated in the road by a person who had the right to operate it, and in holding the owner of the engine not liable to the person injured by the fright of the horse, the court said:

"Although machinery and the noises made in operating it are of such a character as to frighten horses, this alone does not impose a liability; therefore, the defendant in this case, being in lawful occupation of the road with its machinery, and using it for a lawful purpose, was not responsible for the appearance of the machinery, or for the noise or other occurrences usual in its opera-

tion. Injury alone is not sufficient to support an action arising from the alleged negligence of the defendant. There must be a concurrence of wrong and injury. If a person does an act which is not unlawful in itself, he can not be made liable in damages for the resulting injury, unless he does the act at a time or in a manner or under circumstances which will render him chargeable with a want of proper regard for the rights of others.''

Other instructive cases generally supporting the principles announced are Elam v. City of Mt. Sterling, 132 Ky., 657; Cincinnati Railroad Co. v. Commonwealth, 80 Ky., 137; Piollet v. Simmers, 106 Pa. State, 95, 51 Am. Rep., 497; Macomber v. Nichols, 34 Mich., 212, 22 Am. Rep., 522; Loberg v. Town of Amherst, 87 Wis., 634, 41 Am. St. Rep., 69; Kingsbury v. Deadham, 13 Allen (N. Y.) 186, 90 Am. Dec., 191; Lynn v. Hooper, 93 Me., 46, 47 L. R. A., 752.

Did the fact that the wire was left at the place where it was put for several days, convert into an actionable wrong that which was lawful in its origin? We think not. As stated, the evidence shows that work had been commenced in stringing the wire, in connection with which the coils in question were to be used, but had not progressed to the point where this wire was located. Of course these two small coils of wire could have been easily and conveniently moved and replaced at any time, or immediately before being used, but, considering the size of these coils of wire, it cannot fairly be said that the mere fact that they were permitted to remain on the side of the road for the time mentioned created a liability that except for this would not have existed. There was nothing in the appearance or size of these coils of wire that would cause a person of reasonable prudence to anticipate that they would frighten horses. Of course, what is a reasonable time, in matters like this, must depend largely on the nature and quality of the thing, and on how long it has been permitted to remain where it was put and the right of the person to locate it, but when a telephone company, in stringing its wires, places, as it has the right to do, small coils of wire along the road, to be used as the work progresses, of such a size, nature and quality as not to make it actionable negligence to place them by the side of the road, it would be extending beyond all reasonable limits the doctrine of liability to say that because the wire was left a day or a week longer than it might have been, the company is liable, when it

would not have been if it had used the wire on the day or the day following the day it was placed there.

Upon the whole case we are of the opinion that the jury should have been directed to find a verdict for the telephone company, and if there is another trial, and the evidence is in substance as it was on the last trial, the court will so instruct the jury. The judgment in the damage case is reversed for proceedings in conformity with this opinion, and the judgment in the case seeking a new trial is affirmed.