James HARAGAN, Appellant,

v.

AMERICAN FEDERATION OF GRAIN MILLERS INTERNATIONAL, AFL–CIO, et al., Appellees.

Court of Appeals of Kentucky.

May 2, 1969.

Rehearing Denied Oct. 24, 1969.

**132**

Stuart E. Alexander, Tilford, Dobbins, Caye & Alexander, Louisville, for appellant.

Bill V. Seiller, Jones, Ewen, MacKenzie & Peden, Louisville, for appellees.

DAVIS, Commissioner.

The trial court entered summary judgment for the defendants in James Haragan's action for personal injuries and special expenses allegedly sustained by Haragan when his motorcycle collided with a salamander heater being maintained by the defendants on the shoulder of St. Matthews Avenue in Jefferson County. The trial judge did not assign a specific basis for the summary judgment, but it reasonably appears, and the parties seem to so regard it, that contributory negligence of the plaintiff was deemed dispositive of the case.

The plaintiff-appellant contends that the defendant-appellees were maintaining a nuisance in the form of a dangerous instrumentality and that his contributory negligence, if any, is not available as a defense. Alternatively, it is contended by appellant that appellees were guilty of gross negligence so that contributory negligence would not bar recovery. Finally, it is said by appellant that a submissible issue as to proximate cause was presented.

At the time of the accident, Haragan was sixteen years old and was operating a small Honda motorcycle. Riding behind him on the motorcycle was another boy who alighted from the vehicle before any impact occurred. The accident occurred on a clear, dry afternoon in January. Haragan was turning left off Westport Road to travel northwardly along St. Matthews Avenue. In doing this he was required to cross three sets of railroad tracks before reaching the regular surface of St. Matthews Avenue. The total right of way for St. Matthews Avenue is 40 feet, but the blacktop traveled portion of it is 18 feet in width. About 30 feet north of the northernmost rail on the crossing and on the shoulder of the east side of St. Matthews Avenue, members of the appellee union had erected a small shack for the convenience of pickets who were engaged in a strike against a nearby concern. In front of the shack and between it and the traveled portion of the street was located the salamander heater at which some of the pickets were warming themselves just before the accident.

Haragan explained that as he proceeded across the railroad tracks he noted an automobile traveling southwardly on St. Matthews Avenue. In relating his reaction to the car's presence, an excerpt from his deposition discloses:

"146—In your opinion at that time did that car constitute any hazard to you? Were you afraid that car was going to strike you?

A—No, sir; not when I started out, but when I was about halfway—starting to turn onto the tracks, I noticed she acted like she didn't notice me, so I swung wide."

Haragan was unable to pinpoint exactly the location of his vehicle when the back wheel of it slipped, although he said he was "* * * about ready to finish crossing the last track, I am pretty sure." He said that when he felt the rear wheel skid he looked back and saw that it had skidded to his right whereupon he turned the front wheel to the right to compensate for the skid. It was at about this time that the passenger alighted from the motorcycle. Har-

agan and his passenger estimated the speed of the Honda at ten to twelve miles per hour as it proceeded across the railroad tracks.

Haragan said his vehicle had reached the surface of the shoulder of the street when he saw the shack ahead of him. He veered to the left in order to avoid striking the shack, only to collide with the salamander which was knocked over. The injuries of which Haragan complains were allegedly sustained as the result of burns he suffered from the salamander fire. Haragan said he never did see the salamander until he struck it and that he was not aware of the men standing in front of the shack until he had turned away from the shack.

In the appellees' brief there is no affirmative contention that the appellees were free of negligence in maintaining the salamander at a point on the shoulder about 36 inches from the edge of the traveled surface of St. Matthews Avenue. Rather, the appellees assert that appellant was contributorily negligent as a matter of law; his negligence in losing control of the Honda was the sole proximate cause of the accident; and appellees' conduct in placing the salamander near the highway does not bar contributory negligence as a defense.

■ In testing whether it was proper to grant summary judgment, we proceed from the familiar premise that the party moving for a summary judgment has the burden of establishing the nonexistence of any genuine issue of material fact, and for purposes of the motion all doubts are to be resolved against the moving party. Spencer v. Leone, Ky., 420 S.W.2d 685; Robert Simmons Construction Company v. Powers Regulator Company, Ky., 390 S.W.2d 901. Assuming, without deciding, that Haragan was negligent in losing at least some control of his motorcycle on the railroad crossing, it will be recalled that he had overcome this problem and had the vehicle in balance and was moving normally. It seems obvious, and certainly may be inferred in weighing the summary judgment motion, that Haragan could and would

have proceeded completely without incident had the shoulder of the road not been obstructed by the salamander. Moreover, it can reasonably be inferred from the evidentiary material presented that Haragan's possibility of discovering the salamander in time to avoid collision with it was naturally impeded by the pickets who were gathered about it just before Haragan collided with it.

We deem it unnecessary to pass upon appellant's contention that the maintenance of the salamander was an absolute nuisance, thereby depriving appellees of the defense of contributory negligence. Neither do we regard the record as presently constituted as sufficient to warrant a ruling as to gross negligence. We have concluded that the evidentiary material was insufficient to sustain a finding that Haragan was, as a matter of law, guilty of such contributory negligence as to bar recovery.

■ As early as Endicott v. Triple State Natural Gas & Oil Co., 76 S.W. 516, 25 Ky.Law Rep. 862, this court noted that: "Public highways belong to the public, from side to side and from end to end." Some thirty years later in Kentucky Utilities Company v. Sapp's Adm'r, 249 Ky. 406, 60 S.W.2d 976, treating the liability of a utility company in maintaining a utility pole along the shoulder of a road, this court followed the principle enunciated in Endicott and predicated liability against the utility company on the showing that it had placed its pole so close to the traveled portion of the highway as to endanger the safety of users of the highway in the ordinary course of travel. It is interesting to observe that in Kentucky Utilities Company v. Sapp's Adm'r the automobile which collided with the pole was on the automobile's left side of the highway, it being explained that a blowout of a tire had forced the car across the road. Further instances of cases touching the problem at hand may be found in 3 A.L.R.2d 6–73.

■ Generally speaking, when a motorist runs off the road he is called upon

to demonstrate that this action was not brought about through his negligence in operation. In the present case Haragan testified that he swung far to his right because of apprehension that the driver of the car meeting him did not see him. In this connection we note with approval the following excerpt from 40 Am.Jur.2d, Highways, Streets, and Bridges, Section 566, pages 38, 39:

"It need not be shown that he was forced out of the traveled path by an unavoidable accident, or circumstances beyond his control, in order to relieve him from the imputation of negligence, but he may recover where he leaves it voluntarily under a reasonable fear of injury or sense of danger, and in order to secure his personal safety.

"While the shoulder of a highway is not designed for general driving, it must be maintained in a reasonably safe condition for use by a traveler when out of necessity he must drive thereon, and he has a right to assume that the shoulder is in a reasonably safe condition and that he may drive thereon without undue danger, at least in the absence of warnings to the contrary. Thus, a motorist is deemed free from contributory negligence, or at least contributory negligence as a matter of law, where he is forced to use the shoulder of the highway to avoid an oncoming motorist, and sustains injuries as a result of the rutty condition of the shoulder."

■■ It is our view that appellant furnished sufficient evidentiary material to demonstrate the existence of a genuine issue of material fact as to whether his action in using a part of the shoulder of the roadway was reasonable in the circumstances. The appellees, having no color of authority to use any portion of the highway as a base for their private endeavors, stand in a less favorable position than would a franchised utility or a contractor building or repairing a highway. See East Tennessee Tel. Co. v. Parsons, 154 Ky. 801, 159 S.W. 584, 47 L.R.A.,N.S., 1021,

and Miller v. Ky. Traction and Terminal Co., 164 Ky. 545, 175 S.W. 976. It certainly cannot be said that it is utterly unforeseeable, within the normal experience of mankind, that users of a highway may well have to resort to the shoulders due to many and varied circumstances. Therefore, appellees were charged with foreseeability that a motorist or cyclist might need to use the highway shoulder just as Haragan did in this case. Within the rationale of Armes v. Armes, Ky., 424 S.W.2d 137, the unauthorized use of the shoulder could be found to be a proximate cause of the accident, nor was the conduct of Haragan so unusual or unforeseeable as to be an intervening, superseding cause as a matter of law. We are not holding that Haragan was, as a matter of law, free of contributory negligence but merely that the present record does not warrant a finding of his contributory negligence as a matter of law.

■ Appellees contend that our decisions in Russell v. Prater, Ky., 419 S.W.2d 764; Riley v. Burgess, Ky., 410 S.W.2d 712; and Hines v. Westerfield, Ky., 254 S.W.2d 728, conclusively show that Haragan's negligence in losing control of his vehicle, was the sole proximate cause of the accident. We are not so persuaded, because in the first two of those cases the obstacle struck by the plaintiff was parked in the main traveled portion of the highway where the plaintiff had a continuing duty and opportunity of ample lookout to have avoided the collision. The lookout duty along the shoulder is hardly equatable with the usual duty of lookout in these circumstances. In Hines v. Westerfield, this court held that the defendant's negligence was not a proximate cause of the accident because of the intervening unforeseeable negligent act of a third person which forced the plaintiff off the road. As noted, it is our view that there is no such unforeseeable event depicted in this record as to bring the intervening-cause doctrine into play.

As noted, we reserve without decision all questions not specifically determined.

The judgment is reversed with directions for such further proceedings as may be consistent with the opinion.

EDWARD P. HILL, MILLIKEN, PALMORE, and STEINFELD, JJ., concur.

OSBORNE and REED, JJ., dissent.