# Staunton

GLENNA GRACE GABBARD, AN INFANT, WHO SUES BY MARTHA L. GABBARD, HER MOTHER AND NEXT FRIEND v. THOMAS WILDER KNIGHT, JR., AND ASSOCIATES INVESTMENT CORPORATION.

ALBERT L. GABBARD v. THOMAS WILDER KNIGHT, JR., AND ASSOCIATES INVESTMENT CORPORATION.

September 2, 1960.

Record Nos. 5120, 5121.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Robert Friend Boyd* and *J. Randolph Davis* (*Davis & Boyd,* on brief), for the plaintiffs in error.

*John F. Rixey* (*Rixey & Rixey,* on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

On July 18, 1958, about 5:00 p. m., Glenna Grace Gabbard, twenty months old, while walking from the north side toward the southern side of Ocean View avenue in the city of Norfolk, was struck and badly injured by an automobile driven eastwardly by Thomas Wilder Knight, Jr., and owned by his employer, Associates Investment Corporation. The little girl, suing by her mother and next friend, filed a motion for judgment against Knight and Associates Investment Corporation to recover damages for her injuries. The father, Albert L. Gabbard, filed a motion for judgment against the same defendants to recover for medical expenses incurred by him and damages for the loss of the child's services. By agreement the two cases were heard together by a jury which found for the defendants in each case. Judgments for the defendants were entered immediately.

On the same day the plaintiffs moved that the verdicts be set aside on the ground that they were "contrary to the law and evidence." This motion was overruled and judgments were again entered in accordance with the verdicts. Within twenty-one days of the date of the entry of the judgments and before they had become final, the plaintiffs filed a motion "to vacate the judgments" theretofore entered, to set aside the verdicts, to enter judgments *non obstante veredicto* in favor of the plaintiffs, and "to grant a new trial on the issue of damages only," or, in the alternative, "to grant a new trial on all issues, for the reasons that the verdicts of the jury were contrary to the law and the evidence, and *was* without evidence to support them, and because of error in granting and refusing of instructions, as stated in the exceptions thereto." This motion was likewise overruled and the plaintiffs "objected and excepted." We granted a writ of error in each case. For convenience the parties will be referred to as they appeared in the lower court.

On appeal the plaintiffs claim (1) that the verdicts are contrary to the law and the evidence in that the evidence shows, as a matter of law, that the defendant, Knight, the driver of the car, was guilty of negligence which was a proximate cause of the accident; and (2) that the court erred in granting and refusing certain instructions.

At the outset the defendants argue that we should not consider the sufficiency of the evidence to sustain the verdicts and the rulings of the lower court on the instructions, because, they say,

these matters were not brought to the attention of the lower court within the proper time.

There is no merit in this contention. Rule 3:21 provides that, "All final judgments, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified or vacated for twenty-one (21) days after the date of entry, and no longer." Hence, at the time of the last motion of the plaintiffs the judgments had not become final and the lower court had full power and authority to inquire into the sufficiency of the evidence to sustain the verdicts and the objections made during the trial to its rulings on the instructions.

■ The defendants next say that the plaintiffs are "estopped" to assert the insufficiency of the evidence, because, they say, "At the conclusion of the defendants' evidence the plaintiffs made no motions to strike the defendants' evidence," but consented to submitting to the jury the question of the negligence of the defendant, Knight.

This argument is likewise without merit. While a motion to strike is an appropriate way of testing the sufficiency of relevant evidence to sustain an adverse verdict, it is not the only way. It has long been the practice in this jurisdiction to test the sufficiency of such evidence by a motion to set aside the verdict. Indeed, in *Southern Railway Co.* v. *Cooper*, 98 Va. 299, 302, 36 S. E. 388 (decided in 1900), this court held that a motion to strike was not a proper way of testing the sufficiency of relevant evidence to sustain a verdict. Since that time the use of the motion to strike has been approved by us and is quite frequently employed. See *Anderson* v. *Clinchfield R. Co.*, 171 Va. 87, 89, 198 S. E. 478, 479; *Dudley* v. *Guthrie*, 192 Va. 1, 3, 63 S. E. 2d 737, 738; Burks Pleading and Practice, 4th Ed., § 284, p. 506 *ff.* But that method has not superseded or supplanted a motion to set aside the verdict as an equally appropriate method of testing the sufficiency of the evidence. This latter method is still sanctioned by statute. Code, § 8-352. See also, Burks Pleading and Practice, 4th Ed., § 325, p. 604 *ff.*

In *Seinsheimer Company* v. *Greenaway*, 159 Va. 528, 533, 166 S. E. 539, we said: "In a civil case a defendant has the option of making a motion to strike the evidence of the plaintiff from the case, demurring to the evidence, or awaiting the verdict of the jury." The plaintiff, of course, has the same option. See *Rountree* v. *Rountree*, 198 Va. 658, 663, 96 S. E. 2d 113, 116; Burks Pleading and Practice, 4th Ed., § 277, p. 494.

■ We turn, then, to the sufficiency of the evidence and the lower court's rulings on the instructions. At the scene of the accident Ocean View avenue runs east and west, is level, smooth paved, and straight for several blocks. It is 48 feet wide from curb to curb and designed to carry three lanes of travel in each direction, with a double center line painted on the pavement. The accident occurred in daylight when the visibility was good and the pavement dry.

A short time before the accident the little girl had been playing with her sister and a friend on the steps of the Gabbard home, which is located on the northern side of Ocean View avenue between Fifteenth and Sixteenth streets. No one saw her as she made her way for a distance of 25 feet from the steps to the northern side of the street.

Dominick J. Pecora, an eyewitness, was standing on the southern side of the street opposite the Gabbard house. He testified that he "happened to look up" and saw the child "just about on the white line" of the street, "toddling" toward him. About the same time he saw the approaching Knight car, 40 or 50 feet from the child, and "yelled, Stop!" After this warning, he said, the driver applied his brakes, the car skidded, and its left front struck the child.

According to this witness, while the traffic along the street was "medium" yet as the car approached the child there were no other vehicles in the immediate vicinity which obstructed the view of the driver. Nor were there, according to his testimony, any vehicles parked on the northern side of the street between the Gabbard house and the point where the child had entered the street. He estimated the speed of the Knight car at from 25 to 30 miles per hour, which was within the permitted speed limit.

An examination of the scene immediately following the accident showed that the car had skidded 35 to 40 feet along the pavement in the eastbound lane next to the center line.

The defendant, Knight, testified that as he approached the scene he was proceeding at a speed of from 25 to 30 miles per hour in the eastbound lane next to the center line. He heard Pecora's warning, and at the same time saw the child which was then about three or four feet on the northern side of the center line, that is, in the west-bound lane of travel about 50 or 60 feet away. She was, he said, "traveling in my direction as a baby walks or waddles." He immediately applied his brakes and the car skidded. The child, he said, "kept right on walking. She walked directly in front of me and I

hit her." At the time of the impact the child had crossed the center line and was in his lane of travel.

Knight further testified that he had not seen the child as he approached the scene and until he heard Pecora's warning. He described the traffic in the vicinity as "heavy," with cars ahead of and behind him, and others going in the opposite direction. When asked whether any car was parked on the northern side of the street near the Gabbard house, his reply was, "I believe there was and I think it was a Chevrolet * * * right near the Gabbard house. I am not sure."

When pressed on cross-examination as to whether after seeing the child he could have avoided striking her by turning his car to the right or left, he replied that he "probably" or "possibly" could have done so had he had sufficient time to consider the passing traffic.

Russell H. Jernigan, called as a witness for the defendants, testified that he was driving westwardly along Ocean View avenue and coming to a stop at Fifteenth street, about 100 to 150 feet west of the point of the impact, when he heard Pecora's warning and the screeching of brakes; that he looked back and saw the child rolling in the street, after having been hit. Neither he nor a companion in his car saw the child as they passed the Gabbard house. According to this witness, at the time of the accident traffic along Ocean View avenue was heavy in both directions.

There is no evidence that as the Knight car approached the scene other children were on or near the street.

We conclude from a consideration of this evidence that whether defendant, Knight, was negligent in not observing the child as she approached the street, and in not avoiding running into her after he saw her, were questions for the jury under proper instructions. We are not told how long the child had been in the vicinity of the street. According to the evidence for the defendants, traffic was heavy in both directions near the scene and this necessarily required the attention of an ordinarily careful driver. There was no occasion for Knight to be on the lookout for children on or near the street. Moreover, it was for the jury to say whether after the defendant, Knight, saw the child he could, by the exercise of ordinary care, have avoided striking her.

Several instructions, granted at the request of the defendants, are attacked on the ground that they are not applicable where, as here, the duty of the driver of an automobile toward a child and the conduct of the child are involved.

We have many times pointed out that the duty and liability of the driver of an automobile to adults and children are measured by different standards. Ordinary care toward an adult under certain circumstances might be gross negligence toward a child under the same conditions. The driver must increase his exertions in order to avoid danger to children whom he may see, or by the exercise of reasonable care should see, on or near the highway. 2 Mich. Jur., Automobiles, § 37, p. 487; *Conrad* v. *Taylor*, 197 Va. 188, 191, 89 S. E. 2d 40, 42; *Baker* v. *Richardson*, 201 Va. 834, 837, 838, 114 S. E. 2d 599, 602.

Moreover, the conduct of a child is not measured by the same rules which govern that of adults, because a child does not have the knowledge and experience to know or estimate correctly the probable consequence of his acts in a given situation. *Conrad* v. *Taylor, supra*, 197 Va., at page 191, 89 S. E. 2d, at page 42, and cases there cited.

Instruction D-4, granted at the request of the defendants, reads thus:

"The court instructs the jury that Mr. Knight was not an insurer against injury to the infant plaintiff and was not required to exercise a high degree of care, but was only required to exercise reasonable or ordinary care in and about the operation of his vehicle.

"If you believe from the evidence that Mr. Knight did exercise the care required of him under all the circumstances and conditions then prevailing, then you should find your verdict for the defendants."

The first paragraph of this instruction fails to take into consideration the fact that the case involved the duty of the driver of a car toward a child and the conduct of the child. It should have been qualified by providing that the defendant driver "was not required to exercise a high degree of care" for the safety of the child "unless he saw, or in the exercise of ordinary care should have seen, that she was in close proximity to the street." However, since this defect was not brought to the attention of the lower court, the giving of the instruction was not reversible error. Rule 1:8.

Over the objection of the plaintiffs the court granted Instruction D-7 which reads thus: "The court instructs the jury that a motorist has a superior right over pedestrians in between intersections and further instructs you that Mr. Knight had a right to assume that no pedestrians would cross East Ocean View avenue between intersections until the contrary appeared, or should have appeared to him in the exercise of reasonable care."

The plaintiffs' objection to this instruction, that it was not "applicable" to this child, was well taken. When the driver of an automobile sees, or by the exercise of ordinary care should see, a 20-month-old child near or approaching a street, he has no right to assume that the child will cross the street only at an intersection. A similar instruction was held to be reversible error in *Baker* v. *Richardson, supra.*

■ Not only are Instructions D-4 and D-7 erroneous in form, but they are in conflict with the plaintiffs' Instructions X-1 and X-2, which properly stated the duties of the driver with respect to this child. The fact that these latter instructions, offered on behalf of the plaintiffs, were proper in form did not cure the error in Instruction D-7. This is so because where the instructions are conflicting and inconsistent the jury will be as likely to follow the bad as the good, and it cannot be known which they have followed. *Heinz Company* v. *Shafer, Inc.,* 188 Va. 320, 334, 49 S. E. 2d 298, 304. Hence, the giving of such conflicting and inconsistent instructions is error, unless it plainly appears from the record that the jury could not have been misled by them. In the present case it does not so appear. See *Tolston* v. *Reeves,* 200 Va. 179, 183, 104 S. E. 2d 754, 757.

■ Over the objection of the plaintiffs, the court granted Instruction D-3 which reads as follows: "The court instructs the jury that if you believe from the evidence that the defendant, Mr. Knight, through no fault of his own, was placed in a position of sudden emergency, requiring immediate action on his part to try to avoid an accident, then under such circumstances of sudden emergency the law makes allowances for errors of judgment and does not require him to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances."

This instruction is not supported by the evidence. It was framed upon the theory that the child suddenly ran into the street and in front of the oncoming car, whereas all of the evidence, including the testimony of the driver himself, is that she was traveling in his "direction as a baby walks or waddles." The emergency, if any, was created by Knight's admitted failure to see her until too late for him to stop.

■ It is argued on behalf of the defendants that we should not

consider these instructions because they were not designated for printing as required by Rule 5:1, § 6. The intent and purpose of this Rule is to have printed all that is germane to the errors assigned, and paragraph (f) of section 6 of the Rule so indicates. See also, *Jenkins* v. *Womack*, 201 Va. 68, 69, 109 S. E. 2d 97, 98, and cases there cited. This requirement is for the convenience of the court and obviates the necessity of our referring to the manuscript record.

The requirement of this Rule is subject to the express qualification that, "However, this court may, at the instance of counsel or of its own motion, consider other parts of the record" not printed. Rule 5:1, § 6(f).

In the present cases, while the instructions are not in the printed record, they have been furnished to us as addenda to the briefs. As has been said, several of these show that the cases were submitted to the jury upon improper principles of law. Hence, in the interest of justice and pursuant to the qualifying provisions of the Rule, we have considered them.

In *Stanpark Realty Corp.* v. *City of Norfolk*, 199 Va. 716, 101 S. E. 2d 527, relied upon by the defendants, we declined to consider a number of refused instructions not printed. But we there observed that those given "fully and correctly informed the commissioners of their duties" in the proceeding. 199 Va., at page 725, 101 S. E. 2d, at page 534.

In *Thompson* v. *Mann*, 201 Va. 528, 111 S. E. 2d 792, likewise relied upon by the defendants, we declined to consider certain instructions granted and refused but not printed. However, we observed that the granted instructions printed in the brief showed that the jury were "accurately and adequately instructed." 201 Va., at page 532, 111 S. E. 2d, at page 795.

Thus, the situation in each of the cases relied on by the defendants is readily distinguishable from that in the cases here under consideration.

For the error of the lower court in granting Instructions D-7 and D-3, *supra*, the judgments under review are reversed, the verdicts set aside, and the cases remanded for a new trial.

*Reversed and remanded.*