**Richmond**

JOHN R. MCGEE

v.

COMMONWEALTH OF VIRGINIA

No. 1498-85

Decided June 16, 1987

COUNSEL

John W. Scott, Jr. (Hill, Tucker & Marsh, on brief), for appellant.

Leah A. Darron (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.** — The appellant, John R. McGee, was convicted of manufacturing PCP and PCC in violation of Code § 18.2-248, and of possessing PCP in violation of Code § 18.2-250. The jury fixed punishment at twenty-five years imprisonment and a $10,000 fine on each manufacturing charge and ten years imprisonment on the possession charge. The trial judge ordered the twenty-five year terms to run concurrently, but consecutive to the ten year term.

On appeal, McGee raises the following issues: (1) whether the evidence was sufficient to convict him of manufacturing a controlled substance; (2) whether the evidence was sufficient to convict him of possession of a controlled substance; and (3) whether he could be convicted of manufacturing both PCC and PCP under the facts of this case. We conclude that there was sufficient evidence of possession and manufacturing, and that appellant was properly convicted of manufacturing both PCC and PCP. We therefore affirm the decision of the trial court.

I.

On December 19, 1984, pursuant to a valid warrant, state police officers searched a three room cabin in an isolated area of Spotsylvania County. The three rooms are connected by open apertures without doors. Outside the cabin the police detected a strong ether-like odor. Upon entering the cabin the police found McGee and another person lying on the floor. Ten feet away in

the living room, the police found a cooler containing many chemicals commonly used to manufacture PCC and PCP,[1] although the police did not find separate quantities of piperidine (used to make PCC) or bromobenzine (used to make PCP from PCC). Police also found a container of parsley flakes treated with PCP, thirteen containers labelled "parsley flakes" and filled with plant matter, four glass jars containing PCP residue, two plastic yellow buckets (one with PCC residue), two plastic yellow spoons commonly used to mix PCC or PCP, two "bongs," four syringes, two screens, three weights, assorted plastic bags containing seeds and plant matter, one can of Coleman's fuel, one can labelled "lye," one gallon jug labelled "distilled water," and two triple beam balance scales. In the bedroom police found 172 grams of PCC drying on a newspaper next to a portable heater. The testimony indicated that all of these items were consistent with the manufacture of PCC and PCP. There was no evidence specifically indicating that McGee had touched, manipulated, moved, opened or closed any of the items found. At McGee's suggestion, the police also searched a vehicle parked next to the cabin. There police found PCP treated plant matter, but the vehicle was not registered in McGee's name. Following his arrest, McGee told police that two boys found at the cabin had "nothing to do with this" and that they were simply in the wrong place at the wrong time. He also told the police officers, "you are charging me with PCP and you don't have PCP." McGee told police that the substance found at the cabin was not illegal since the final step in making PCP (adding another chemical) had not been completed.

## II.

■ We turn now to appellant's first two contentions. Appellant contends that the evidence was insufficient to prove (1) that he manufactured a controlled substance, or (2) that he possessed a controlled substance. The Commonwealth argues that McGee cannot now raise these issues since he made no motion to strike the Commonwealth's evidence in the trial court. In *White v. Commonwealth*, 3 Va. App. 231, 348 S.E.2d 866 (1986), we held:

---

[1] Muriatic or hydrochloric acid, cyclohexanone, magnesium metal turnings, potassium cyanide, sodium hydroxide, and ethyl ether.

[A] defendant is barred on appeal from challenging the sufficiency of the evidence when he fails to renew his motion to strike the evidence after presenting his case, unless the record demonstrates that good cause exists or that consideration of this issue would enable this court to attain the ends of justice.

*Id.* at 234, 348 S.E.2d at 868.

The case now before us is distinguishable from *White* because McGee filed with the clerk of the trial court a timely written motion to set aside the verdict. *See* Rule 3A:15(b). A motion to set aside the verdict may be based either on the sufficiency of the evidence or upon error committed during trial. *Id.* A motion to set aside the verdict often raises questions identical to those raised by a motion to strike the evidence. *See Boulevard Apartments, Inc. v. Evans*, 177 Va. 315, 320, 14 S.E.2d 310, 312 (1941). A prior motion to strike the evidence, however, is not a prerequisite to a motion to set aside the verdict. *See Gabbard v. Knight*, 202 Va. 40, 43, 116 S.E.2d 73, 75 (1960). In *Gabbard* the defendants argued that the plaintiffs could not on appeal challenge the sufficiency of the evidence of negligence since the plaintiffs made no motions to strike the evidence at trial and consented to submitting to the jury the question of defendant's negligence. *Id.* The court further explained:

While a motion to strike is an appropriate way of testing the sufficiency of relevant evidence to sustain an adverse verdict, it is not the only way. It has long been the practice in this jurisdiction to test the sufficiency of such evidence by a motion to set aside the verdict.

*Id.* The appellate court, however, cannot review the action of the lower court in overruling a motion to set aside the verdict unless the ground upon which the motion is based is set forth in the record. *See McArter v. Grigsby*, 84 Va. 159, 161, 4 S.E. 369, 370 (1887). McGee's written motion to set aside the verdict articulates specific objections to the sufficiency of the evidence of possession and manufacturing. McGee filed this motion with the clerk of the trial court, but the record does not indicate whether the trial judge ruled on the motion. Nonetheless, where, as here, the appellant has made specific objections to the sufficiency of the evidence,

and to enable us to attain the ends of justice, we will consider these issues on appeal. *See* Code § 8.01-384; Rule 5A:18.

McGee contends that the evidence was insufficient to prove that he either manufactured or possessed a controlled substance. We review the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. The judgment appealed from will be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it. *Naulty v. Commonwealth*, 2 Va. App. 523, 529, 346 S.E.2d 540, 544 (1986); *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). The circumstances of time, place, motive, means and conduct, to the extent that these circumstances are proved, must concur in pointing to the defendant's guilt beyond a reasonable doubt. Not all of those circumstances, however, must be proved in every case. *Cantrell v. Commonwealth*, 229 Va. 387, 398, 329 S.E.2d 22, 29 (1985); *Mullis v. Commonwealth*, 3 Va. App. 564, 575-76, 351 S.E.2d 919, 926 (1987).

We first consider the circumstantial evidence of McGee's possession of PCP. Possession of a controlled substance need not be exclusive, and may be shared. *Archer v. Commonwealth*, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983); *Gillis v. Commonwealth*, 215 Va. 298, 302, 208 S.E.2d 768, 771 (1974); *Italiano v. Commonwealth*, 214 Va. 334, 335, 200 S.E.2d 526, 528 (1973). Moreover, possession of a controlled substance may be actual or constructive. *See Archer*, 225 Va. at 418, 303 S.E.2d at 863. "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.' " *Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)); *see Eckhart v. Commonwealth*, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981). When McGee was arrested he made several statements to the police officers at the

cabin. McGee told the police that the two boys found at the cabin had "nothing to do with this," that they simply were in the wrong place at the wrong time. He also said to the police: "You are charging me with PCP and you don't have PCP." McGee explained to the police that the substance found at the cabin was not illegal because another chemical would have to be added in order to make PCP. Apparently the "substance" McGee was referring to was the large quantity of PCC found "drying" on a newspaper next to a portable heater. McGee even directed the police to a nearby automobile where they found PCP treated "plant matter." Other circumstances are equally significant. When the police first approached the cabin a strong odor of ether was detectable from outside the cabin. McGee was found inside the cabin ten feet from a container of PCP treated parsley flakes, four jars containing PCP residue, and various other chemicals and paraphernalia, including buckets, plastic bags, bongs and two triple beam balance scales.

The issue before us is whether there is sufficient circumstantial evidence to support the jury's conviction of McGee for possession of a Schedule II controlled substance. After reviewing all of the evidence, including McGee's statements to the police indicating his awareness of the presence of the chemicals as well as their criminal import, we conclude that there was sufficient circumstantial evidence for the jury to conclude that the PCP found in the cabin was within McGee's constructive possession.

■ We turn now to McGee's contention that the evidence was insufficient to support his convictions for manufacturing PCC and PCP. Here the issue is whether there was sufficient circumstantial evidence from which the jury could have concluded that McGee manufactured both PCC and PCP. *See Naulty*, 2 Va. App. at 529-30, 346 S.E.2d at 544; *United States v. Welebir*, 498 F.2d 346, 350 (4th Cir. 1974); *cf. Rhodes v. Commonwealth*, 223 Va. 743, 747, 292 S.E.2d 373, 375 (1982); *Spear v. Commonwealth*, 221 Va. 450, 452-53, 270 S.E.2d 737, 739 (1980). "Manufacture" is defined in Code § 54-524.2(14a) in pertinent part as follows:

[T]he production, preparation, propagation, compounding, conversion or processing of any item regulated by [Chapter 15.1 of the Drug Control Act of Virginia] either directly or indirectly by extraction from substances of natural origin, or

independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis.

Proof of manufacturing does not require proof that the drug actually was produced. *See Welebir*, 498 F.2d at 350.

In the instant case the police found all of the chemicals, except bromobenzine, required to manufacture PCP. The police found no separate quantity of bromobenzine (used to make PCP from PCC), although the police did find four glass jars containing PCP residue, and a container of PCP treated parsley flakes in the cabin. The police found all of the chemicals, except piperidine, required to manufacture PCC. The police also found a large quantity of PCC drying on a newspaper next to a portable heater. The Commonwealth's expert testified that the PCC must be dry before it can be converted into PCP. The jury could reasonably have inferred that this PCC was recently manufactured. The Commonwealth's expert testified that PCP was used to treat parsley flakes. At the cabin, the police found one container of PCP treated parsley flakes along with thirteen plastic containers labelled "parsley flakes" and filled with plant matter. The expert explained that the strong odor of ether, detectable from outside the cabin, was consistent with the ongoing manufacture of PCP. He stated that ether was used to manufacture PCP from PCC. The expert also stated that the two plastic buckets and the two plastic spoons were consistent with the manufacture of PCC or PCP because water does not condense as readily on plastic as it does on glass. McGee's statement to the police that "you don't have PCP" indicates some degree of familiarity with the chemical process. This statement together with the other evidence, including the chemicals and paraphernalia found in the cabin, was sufficient for the jury reasonably to have concluded that McGee manufactured or participated in the manufacture of both PCC and PCP. *Cf. Rhodes*, 223 Va. at 747, 292 S.E.2d at 375; *Naulty*, 2 Va. App. at 529-30, 346 S.E.2d at 544.

### III.

Appellant's third argument is that under the facts of this case he could not be found guilty of manufacturing both PCC and PCP. According to appellant the Commonwealth's chemical analyst testified that piperidine must be mixed with PCC in order to

make PCP. Appellant argues that since no piperidine was found at the cabin, he could not have manufactured PCP. Given this impossibility he contends that he should not have been convicted of manufacturing PCP. In the alternative, appellant argues that the Commonwealth failed to prove that he intended to manufacture both PCC and PCP since only one chemical process was involved.

From our review of the record it is evident that the appellant is mistaken as to the testimony of the Commonwealth's chemical analyst. Mr. Shark testified that piperidine was required in order to manufacture PCC, not to manufacture PCP from PCC. A large quantity of PCC was found in the cabin. Mr. Shark did testify that a chemical he referred to as "bromobenzine" would have to be mixed with the PCC in order to make PCP. No separate quantity of bromobenzine was found at the cabin. In addition to the PCC, however, the police found traces of PCP, various containers, spoons and all of the other chemicals needed to manufacture PCP.

We review the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. *Sutphin*, 1 Va. App. at 243, 337 S.E.2d at 898. There was ample evidence from which the jury could have found that appellant manufactured both PCC and PCP. We also find no merit in appellant's argument in the alternative regarding the sufficiency of the evidence of appellant's intent to manufacture the controlled substances. Under Code § 18.2-248 the Commonwealth need only prove that McGee manufactured a controlled substance.[2]

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

Barrow, J., and Moon, J., concurred.

---

[2] Under Code § 18.2-248 possession of a controlled substance with intent to manufacture a controlled substance is a separate offense.