COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Bray
Argued at Norfolk, Virginia


DEBORAH WILLIAMS

v.   Record No. 2133-95-1          MEMORANDUM OPINION[*] BY
                                   CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                 JUNE 25, 1996


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                     Randolph T. West, Judge

        Bryan L. Saunders for appellant.

        Steven A. Witmer, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.



     Deborah Williams appeals her convictions, after a bench

trial, for grand larceny and felony destruction of private

property.  She argues that the evidence was insufficient to prove

her guilt beyond a reasonable doubt.  We affirm the convictions.

     In July of 1994, Michelle Carlsen was living in Newport News

with her husband and four-year-old daughter.  The family resided

in a new home that was in good condition.  Ms. Carlsen, a

sergeant in the U.S. Army, received a duty assignment in Texas,

and her husband was also away on military assignment.  She

arranged for Deborah Williams, who worked at her daughter's day

care center, to care for the home and forward the mail.  Ms.

Williams also agreed to care for Carlsen's puppy.  Carlsen had

disconnected the battery to her truck, but told Williams where

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the key was in case of an emergency.  Carlsen gave a house key to Williams and no one else.

By September, Carlsen was concerned because she had received only one package of mail from Williams.  She left Williams numerous messages, and finally reached her on October 13, 1994.  Williams told her that she had been busy working in a hotel at night, but that everything was fine at the house.  Still concerned, Carlsen sent a key to a friend, Petty Officer Dauth, and asked him to check the house.

On October 15, Dauth arrived at the house and found it unlocked.  He entered the house and noticed a rancid smell.  Dauth discovered the remains of the dog, decomposing and covered with maggots, on the floor in the den.  The dog had a hole in its head, and blood had soaked through the pad under the carpet.  There were large black stains on the carpet and the tile floor, and black handprints on the walls.  Tables were turned over, and there were piles of dirty dishes in the kitchen, as well as moldy food.  Upstairs, there were dried urine and dog feces in the guest bathroom, and the bedrooms were in disarray.  The master bedroom had apparently been ransacked, and snack food was piled on the bed in the guest room.  Dauth became covered with fleas.

Dauth removed the dog and buried it in the backyard.  He purchased multiple insecticide foggers to kill the fleas.  He activated the foggers and left the premises, locking the door behind him.

Dauth and his wife returned the next day in order to continue their efforts to clean up the house. They found a flea fogger and a can of bug repellent that had not been there the day before. The washing machine had apparently just stopped and there was still a ladies' pantsuit inside it.

Cheryle Harris, Carlsen's neighbor, had observed Williams at the house on several occasions while Carlsen was in Texas. She saw Williams loading her car with clothes in clothes baskets and with other property concealed in large green garbage bags. She saw people other than Williams going in and out of the house, and saw Williams and others driving Carlsen's truck. She saw Williams for the last time in mid-September, but observed others at the house until shortly before Carlsen returned.

Carlsen returned to the house on October 30, 1994. She observed that in addition to the property damage, items of personal property including clothing, jewelry, and tools were missing. She estimated that the value of the missing items was over $2,000, and paid over $1,000 for clean-up and repair of the home. She confronted Williams at work, and testified that Williams told her that someone else had been taking care of the house. She tried to contact this individual at the number Williams gave her, but no one at that location had heard of the individual.

Ms. Williams gave a statement to the police, which was introduced at trial, and also testified in her own behalf. She

stated that she had moved to Gloucester over Labor Day weekend, cleaning the house before she left, and after that did not go to the Carlsen house every day. After moving to Gloucester she returned to the house to do her laundry and feed the dog. Williams stated that about a week prior to the call she received from Carlsen, she had discovered the dog dead in the house. She claimed that the dog had been alive and healthy during her last visit. She covered the dog with a sheet and left it there, and did not return to the house after that. Williams testified that she did not give a house key to anyone else, and claimed to have no idea how the house came to be in such terrible condition.

The Commonwealth argues that Williams failed to preserve her objection to the sufficiency of the evidence pursuant to Rule 5A:18. Williams moved to strike the Commonwealth's evidence, but failed to renew her motion to strike after she presented her own evidence. However, before the court rendered a final order, she made a motion to set aside the verdict that challenged the sufficiency of the evidence. This motion preserved her sufficiency objection after the bench trial. See McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 739-40 (1987).

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). In a case based on circumstantial evidence, the Commonwealth must

exclude every reasonable hypothesis of innocence.  Lafon v.
Commonwealth, 17 Va. App. 411, 425, 438 S.E.2d 279, 288 (1993)
(citations omitted).  The Commonwealth is not required to
disprove every remote possibility of innocence, but is instead
required to prove the guilt of the accused beyond a reasonable
doubt.  Id.  The Commonwealth is only required to exclude
reasonable hypotheses of innocence which arise from the evidence.
Cantrell v. Commonwealth, 7 Va. App. 269, 289-90, 373 S.E.2d
328, 338-39 (1988) (citations omitted).

Both Carlsen and Williams testified that Williams was the
only person with a house key.  There were no signs of forced
entry.  Williams was seen going in and out of the home, and was
also observed removing items from the home in garbage bags.
Viewed in the light most favorable to the Commonwealth, these
facts support the inference that Williams was responsible for the
damage to the home and for the theft of Carlsen's property.

Williams' improbable account of her actions provides further
evidence of her guilt.  She acknowledged visiting the home about
a week before Dauth did, but claimed to have no knowledge of the
home's condition.  Her claim that she left the home in good
condition and her account of the dog's death were contradicted by
other evidence in the record.  Her testimony was inherently
improbable and inconsistent with circumstances in evidence, and
the judge was therefore entitled to reject it.  Servis v.
Commonwealth, 6 Va. App. 507, 525, 371 S.E.2d 156, 165 (1988).

Moreover, the trial court could properly consider her false testimony as affirmative evidence of her guilt.  See <u>Wright v. West</u>, 505 U.S. 277, 296 (1992); <u>Black v. Commonwealth</u>, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981) (citations omitted).  The trial court could reasonably conclude that Williams, and not other individuals whom she may have invited into the home, did at least some of the damage and stole Carlsen's property.  For these reasons, we affirm the convictions.

<u>Affirmed.</u>