COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Annunziata and Bumgardner
Argued at Norfolk, Virginia


BERACE RICARDO BENNETT, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 0613-98-1          JUDGE SAM W. COLEMAN III
                                    MAY 18, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

(Kevin P. Shea, on brief), for appellant.
Appellant submitting on brief.

Ruth M. McKeaney, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


Berace Ricardo Bennett, Jr., was convicted by a jury of first

degree murder and use of a firearm in the commission of murder.

On appeal, Bennett contends that the evidence was insufficient to

support a finding that the shots he fired at the victim were

fatal.  We disagree and affirm the convictions.

BACKGROUND

At 12:45 a.m., Roderick Newby and Phgero ("Maurice") Bernard

argued in the parking lot of a movie theater while Edward Collins,

who was Newby's friend, and Berace Bennett, who was Bernard's

friend and roommate, looked on.  Collins testified that Newby's

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

back was turned to them, but Bernard faced them.  Bennett said to Collins, referring to Newby, "get your man, get your man."  In an effort to avoid a fight, Collins took Newby by the arm and said, "come on man, it's cold out here, you know we ain't got time to argue, whatever."  Newby replied, "all right, I'm coming, I'm coming," but as Newby took a step and turned, Bennett started shooting.  After five or six shots, Newby collapsed, and the defendant stood over the fallen body shooting at him six or seven more times.  The defendant then fled.

Some witnesses testified that after the defendant fled, a second unidentified assailant ran from the opposite direction that Bennett had fled, and repeatedly shot the victim as he lay on the ground.

Immediately after the shooting, Collins ran to a nearby hotel lobby and asked the clerk to telephone for assistance.  He then ran back to Newby where he discovered him "dazed . . . gurgling . . . and . . . looking up at the sky."

Bernard and Bennett had been drinking before and during the movie they had just attended.  Although Bennett now admits firing shots at Newby, Bernard, a convicted felon, testified that neither he nor Bennett was armed or fired shots at Newby.  Bernard testified that Newby pulled a gun on him and began to wave it at him, after which Bernard turned and walked about ten steps away before he heard numerous rapid fire gunshots.  After hearing the shots, Bernard ran to his car.  As he approached the car, Bennett

-

came running toward him.  Bernard testified that he could not drive because a bullet had hit his foot, so he jumped in the passenger seat while Bennett got in the driver's seat.  According to Bernard, the gunshots continued as Bennett drove them away. Joaquin Cruz testified that one of the shooters ran and jumped into the passenger seat of Bernard's car which sped off driving over a sidewalk and running a red light.

Sergeant Edgar Browning confirmed that two nine millimeter handguns were fired at the scene.  Forensic technician Linda Woods testified that she recovered twenty-one casings from the scene -- thirteen nine millimeter W.I.N. Luger casings, and eight nine millimeter R.P. Luger casings.  Medical examiner Dr. Leah Bush testified that Newby's body showed eight separate gunshot entry wounds.  Dr. Bush stated that four of those wounds were lethal. She defined a lethal wound as "meaning one that produced significant bleeding inside the body that would cause his death." Two of these lethal bullet entry wounds were to Newby's back.

At trial, Bennett made no motions to strike the evidence. After trial, Bennett moved to set aside the verdict on the ground that it was without evidence to support it.  After oral arguments, the trial court denied the motion and Bennett appealed.

## ANALYSIS

The Commonwealth argues that Bennett, having failed to move the court to strike the evidence during trial has failed to preserve this issue for appeal.  We disagree.

-

A motion to set aside the verdict is an accepted procedure to test the sufficiency of the evidence.  See Gabbard v. Knight, 202 Va. 40, 43, 116 S.E.2d 73, 75 (1960); McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 740 (1987).  When the appealing party articulates specific objections to the sufficiency of the evidence in a motion to set aside the verdict, the appeals court may review the trial court's ruling on that motion.  See McGee, 4 Va. App. at 321, 357 S.E.2d at 740.  At oral argument on the motion to set aside the verdict, Bennett argued that the evidence at trial was insufficient to prove that Bennett fired any of the fatal gunshots that struck Newby.  Accordingly, he preserved that issue for appeal.

When an appellant challenges the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  An appellate court must discard all the accused's evidence that is in conflict with the Commonwealth's, and accept as true all credible evidence of the Commonwealth.  See Bobblett v. Commonwealth, 10 Va. App. 640, 651, 396 S.E.2d 131, 137 (1990).  The jury has the opportunity to see and hear the witnesses and, therefore, it is the jury's exclusive function to evaluate the credibility of their testimony.  See Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979).  Moreover,

-

"[j]urors are not required to accept in full the testimony of any witness.  They may accept what they believe credible, and reject that which they think not worthy of belief.  Their duty is to settle the matter in dispute."  Henry v. Commonwealth, 195 Va. 281, 290, 77 S.E.2d 863, 869 (1953).

Bennett admits that he fired shots at Newby.  Furthermore, the evidence proved that Newby died of four fatal gunshot wounds.  However, the evidence also showed that two weapons were fired at the scene, and some testimony indicated that an unidentified assailant also fired at Newby.  Thus, the dispositive issue on appeal is whether the circumstantial evidence presented was sufficient to prove either that Bennett fired at least one fatal shot or alternatively, that even if he did not fire fatal shots, he acted in concert with the unidentified second gunman who may have shot Newby.

"Circumstantial evidence may establish the elements of a crime provided it excludes every reasonable hypothesis of innocence."  Lovelace v. Commonwealth, 27 Va. App. 575, 586, 500 S.E.2d 267, 272 (1998).  Whether a particular hypothesis is reasonable, is a question of fact binding on appeal unless plainly wrong.  See id. at 586, 500 S.E.2d at 273.  If, based on all the evidence, no reasonable hypothesis of innocence existed, then we must affirm.

According to Bennett, the Commonwealth has failed to exclude the possibility that a second gunman inflicted all four

-

fatal wounds.  However, the requirement that the Commonwealth exclude every reasonable hypothesis of innocence does not require that the evidence disprove every remote possibility of innocence.  See Avent v. Commonwealth, 209 Va. 474, 164 S.E.2d 655 (1968).  When, as here, the appellant presents an hypothesis of innocence on appeal, the burden is on the appellant to show that no reasonable finder of fact, based on the evidence presented, could have excluded the hypothesis.  See generally Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991) ("The burden is on the party who alleges reversible error to show by the record that reversal is the remedy to which he is entitled.").  Thus, Bennett must show that the facts as established in the record, viewed in the light most favorable to the Commonwealth, do not exclude a reasonable hypothesis of innocence that flows from the evidence.

We find that Bennett has failed to show that he is entitled to reversal.  The evidence presented supports three theories of what could have occurred, under any one of which Bennett is criminally culpable.  Thus, the evidence excluded every reasonable hypothesis of innocence.

First, the fact finder could have found that Bennett was the sole assailant.  Joaquin Cruz testified that he saw only one gunman.  Additionally, Collins testified that Bennett was the only gunman.  Accordingly, the jury could have adopted that testimony to the exclusion of the conflicting evidence.

-

Second, the jury could have found that two gunmen fired shots, but that Bennett fired at least two of the four fatal shots. Bennett's initial shots dropped Newby. Then, after Bennett fled, according to Antonio Harris, the second gunman approached and fired at Newby on the ground. The only evidence describing Newby while he was on the ground places him on his back, looking up. Thus, based on this account, the jury could reasonably infer that the gunshots to Newby's back were fired by Bennett. Since two of the fatal shots entered Newby's back, the evidence proved to the exclusion of a reasonable hypothesis of innocence that Bennett fired at least two of the fatal shots.

Finally, the jury could have determined that although there were two gunmen, they were acting in concert. If the defendant and another unidentified assailant acted in concert, the crime is attributable to both. See Spradlin v. Commonwealth, 195 Va. 523, 528, 79 S.E.2d 443, 445 (1954). Bernard's girlfriend had dated Newby for four years which caused them to argue that evening. According to Bernard, he and Bennett were close friends and they had been drinking together that evening. They left the scene together immediately after the shooting. Bernard testified that he got into the passenger's side of his own vehicle as he and Bennett rushed to leave the scene. Joaquin Cruz testified that a gunman jumped into the passenger side of Bernard's vehicle.

-

Considering the totality of the evidence, the jury reasonably could have concluded that Bernard was the second gunman and that he acted in concert with Bennett.  Under those circumstances, as the trial court instructed the jury, Bennett and Bernard would both be criminally responsible for the fatal gunshots.

In summary, we find that the evidence was sufficient to permit the jury to exclude all reasonable hypotheses of innocence.  Accordingly, we affirm the convictions.

Affirmed.