COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Ortiz and Chaney


ROBERT THOMAS COURTNEY, A/K/A
 ROBERT THOMAS COURTNEY, JR.

v.     Record No. 1810-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 17, 2026


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Victoria A.B. Willis, Judge[1]

(Richard A.H. Quitiquit; Jurach, Tacey & Quitiquit, PLC, on brief),
for appellant.

(Jason S. Miyares,[2] Attorney General; Ken J. Baldassari, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Hanover County convicted Robert Thomas

Courtney of two counts of conspiracy to commit burglary, in violation of Code §§ 18.2-22 and

18.2-91, and one count of possession of burglarious tools, in violation of Code § 18.2-94. On

appeal, Courtney challenges the sufficiency of the evidence to support his convictions. He also

maintains that the trial court erred by admitting testimonial evidence concerning the nature and

use of a "jamming device" found near the location of his arrest.[3]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Patricia Kelly presided over the bench trial.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[3] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

## I. BACKGROUND[4]

Yasmin Somani owned the Italian Jewelry store in Ashland, Virginia. At just after 3:00 a.m. one morning in June 2023, she received an alert that there was motion in the store. Somani accessed video of the store through her security system and observed two men inside the store breaking glass and stealing jewelry. The two men wore black clothing and their faces were masked. Somani's husband spoke to the men through the computer. When they heard his voice, they broke the cameras. Somani notified the police and gave a description of the two men that included their body shape, their height, and their clothing.

Deputy Dante Hill of the Hanover County Sheriff's Office was on patrol with his Dutch Shepherd, Yoshi, when the alarm went off at the jewelry store. Deputy Hill and Yoshi first responded to the rear of a Cracker Barrel restaurant to look "for anybody that might be in the area" and then reported to the jewelry store's back entry. Deputy Hill coordinated with other officers who were setting up a perimeter at that location and then "determined that the best method for my utilization of the K-9 was to begin a K-9 track." Deputy Hill and Yoshi began tracking at 3:35 a.m. directly from the back door of the jewelry store.

Deputy Hill testified that he and Yoshi initially traveled westbound, parallel to a retaining pond fence and along a grass embankment. They then turned northbound, still following the fence, before traveling eastward. Along the route, Deputy Hill saw a canvas bag lying in the grass. He explained that the bag was "out in the open" and recalled "[i]t did not appear to be covered by any foliage or anything like that. It appeared to be freshly placed." Deputy Hill also located a "makeshift machete" along the base line of the fence before continuing into the woods

---

[4] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

and entering "some very thick brush." Deputy Hill and Yoshi made their way through the brush and reached Mechumps Creek, where Deputy Hill found a mechanic's glove lying on a "mason of rocks." The glove was black with white or gray lettering on it. Deputy Hill and Yoshi then crossed the creek and traveled eastward for several feet before walking up an embankment, at an incline, to the north. At that point, Yoshi gave a "proximity alert," which caused Deputy Hill to check the surrounding area. Deputy Hill then found Courtney lying on the ground in thick foliage.

Officer Nikulas Schobitz of the Ashland Police Department responded to the front of the jewelry store and observed shattered glass before responding to the woods where Courtney was found. When he arrived, Officer Schobitz noticed that Courtney wore a black glove with white lettering on it, a black baseball cap, and a radio with an earpiece. Courtney also had leaves in his hair "from hiding in the woodline." Officer Schobitz testified that Courtney "had no wallet, no phone, no identifying information of any kind."

Investigator Anthony Nagy of the Ashland Police Department also responded to the jewelry store to investigate. He testified that the Italian Jewelry store's bathroom wall was "smashed through" from Pro Nails, the neighboring business. Investigator Nagy also took photographs of the store's interior showing the "smashed" jewelry cases inside with much of the jewelry missing. He then responded to the woods to collect evidence.

Investigator Nagy recovered the canvas bag, which held a sledgehammer. Investigator Nagy identified a trash can "from Italian Jewelry that contained jewelry that was missing from the store." When asked where it was found, Investigator Nagy recalled, "Inside the fence of the retention pond that's right behind the store." Investigator Nagy then found a "box that had jewelry from Italian Jewelry" next to Mechumps Creek. He also located the red duffel bag and noted that it contained a "jammer device." At trial, over Courtney's objection, Investigator Nagy

testified that based on his "training and experience" and the "investigation in this case," the item was a "jammer device." Then, without objection, Investigator Nagy explained that a jammer device "can be used to take cell phones offline, block their signal, to block Wi-Fi signals, alarm systems, GPS." However, when the Commonwealth asked Investigator Nagy whether he knew "of any legitimate purpose[] a person has for possessing a jammer device," Courtney's counsel objected to the question as speculation. The trial court sustained the objection.

On cross-examination, Investigator Nagy testified that the jammer device was not connected to a power source. He also stated that there was no evidence that the device communicated with Courtney's radio earpiece. Furthermore, when asked by Courtney's counsel whether he was "aware of any indication that there was any cell phone or Wi-Fi jamming going on at the time of the events," Investigator Nagy recalled, "Not at the time." In addition, Investigator Nagy acknowledged that a footprint found at the crime scene "did not appear to match" the shoes Courtney was wearing that day.

After the Commonwealth presented its evidence at trial, Courtney's counsel moved to strike the evidence. Courtney argued that he was found 250 to 300 yards away from the crime scene, that there was no evidence he possessed any of the items found in the woods, and that no evidence showed the earpiece he wore communicated with the jamming device. He concluded that the evidence was insufficient to prove Courtney committed the offenses. The trial court denied the motion to strike.

Courtney did not present any evidence, and Courtney's counsel renewed his motion to strike the charges. The trial court again denied the motion to strike and convicted Courtney of two counts of conspiracy to commit burglary and one count of possessing burglarious tools. Courtney now appeals to this Court.

## II. ANALYSIS

### A. Sufficiency of the Evidence

On appeal, Courtney argues, "the trial court erred in finding the defendant guilty as the evidence was insufficient as a matter of law to sustain a conviction."[5] Courtney does not challenge the Commonwealth's evidence as to any one element of the three offenses for which he was convicted, but rather argues that the Commonwealth failed to present sufficient evidence—other than his mere proximity to the jewelry store—tying him to the crime scene.

The Supreme Court has stated, "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). Indeed, "[w]hen reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (second alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (emphasis and alteration in original) (quoting *Pijor*, 294 Va. at 512). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (emphasis in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Thus, "[i]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Clark v. Commonwealth*, 279 Va. 636, 641 (2010) (quoting *Commonwealth v. Jenkins*, 255 Va. 516, 520

---

[5] This assignment of error is quoted verbatim from the appellant's opening brief, but capitalization has been removed.

(1998)).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257-58 (2003) (*en banc*)).

"A criminal conspiracy is merely an agreement between two or more persons to commit a crime."  *Simpson v. Commonwealth*, 227 Va. 557, 567 (1984).  "Conspiracy 'requires knowledge of and voluntary participation in' the agreement to carry out the criminal act."  *Carr v. Commonwealth*, 69 Va. App. 106, 117 (2018) (quoting *Zuniga v. Commonwealth*, 7 Va. App. 523, 527 (1988)).  "Proof of an explicit agreement is not required and the requisite agreement may be established by circumstantial evidence."  *Jones v. Commonwealth*, 279 Va. 295, 301 (2010).  This Court has repeatedly held that when

> it has been shown that the defendants "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [factfinder] will be justified in concluding that they were engaged in a conspiracy to effect that object."

*Charity v. Commonwealth*, 49 Va. App. 581, 586 (2007) (alteration added) (quoting *Brown v. Commonwealth*, 10 Va. App. 73, 78 (1990)).

Code § 18.2-94 states, "[i]f any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony."  Even objects possessed for a legitimate purpose and which are not innately burglarious may be burglarious under Code § 18.2-94 if possessed with the intent to use those objects to commit a burglary.  *Moss v. Commonwealth*, 29 Va. App. 1, 4 (1999).  Furthermore, possession of burglarious tools may be proven by constructive possession.  *Hagy v. Commonwealth*, 35 Va. App. 152, 158 (2001).  In such cases, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the

defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control." *Id.* at 158-59 (alteration in original) (quoting *McGee v. Commonwealth*, 4 Va. App. 317, 322 (1987)).

In this case, Somani testified that she saw *two* men in the jewelry store at around 3:00 a.m. breaking the glass cases and stealing jewelry. The men were wearing black or dark clothing and their faces were concealed by masks. The men broke through the wall from Pro Nails, the neighboring store, and smashed the glass jewelry cases, leaving dry wall and broken glass in the store. When Somani's husband spoke to the men through the computer, they broke the camera to conceal themselves. By 3:35 a.m., Deputy Hill and his police canine, Yoshi, responded to the jewelry store and began a "K-9 track," which started at the back door of the jewelry store and traveled along a nearby fence parallel to a retaining pond where a trash can filled with stolen jewelry was later recovered. He eventually crossed Mechumps Creek and ascended a steep embankment. Along the route, Deputy Hill found a canvas bag containing a sledgehammer lying in the grass. The bag appeared to be "freshly placed" in that location because no foliage covered it. Deputy Hill also found a black mechanic's glove with white or gray lettering on it. As he climbed the embankment, Yoshi gave a proximity alert and Deputy Hill found Courtney hiding on the ground nearby in thick foliage with leaves in his hair. He was only about 300 yards from the jewelry store, and he wore a single black mechanic's glove with white lettering on it, a black baseball cap, and a radio with an earpiece. A red duffel bag containing a jammer device was near where Courtney was hiding, and Investigator Nagy found a box with more stolen jewelry on an embankment overlooking Mechumps Creek.

From this evidence, a rational factfinder could conclude that Courtney and his unidentified accomplice conspired together to burglarize the nail salon and jewelry store and that Courtney possessed the jamming device that could be used to block Wi-Fi signals and alarm systems. The

evidence also gave rise to a reasonable inference that Courtney possessed the sledgehammer—obviously used during the burglary—which was recovered from the canvas bag that had been freshly placed on the path that Deputy Hill and Yoshi followed to find Courtney. The circumstantial evidence was clearly enough for a rational factfinder to conclude that Courtney conspired with another person to commit two burglaries—and that he possessed burglarious tools.

Courtney further contends that he presented "multiple and reasonable hypothesis [sic] of innocence" at trial, including that he was homeless or that he had been drinking in a nearby restaurant and was passed out drunk in the woods, but the trial court rejected those assertions and the record fails to support them. "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on this Court unless plainly wrong." *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Indeed, "the factfinder 'determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Sample v. Commonwealth*, 303 Va. 2, 17 (2024) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). Moreover, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Emerson*, 43 Va. App. at 277 (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)).

The trier of fact was free to disbelieve Courtney's theories, and the evidence supports that factfinder's conclusion. We therefore conclude, as we must under our standard of review, that the trial court did not err in finding the evidence sufficient to support Courtney's convictions for conspiracy to commit two burglaries and for possession of burglarious tools.

B. <u>Testimony Pertaining to the Jammer Device</u>

Courtney further argues that the trial court "improperly admitted testimonial evidence at trial regarding the nature and use of a piece of evidence" when the trial court "overruled the defendant's objections to foundation and speculation."[6]

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 543-44 (alteration in original) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Unless otherwise prohibited, "[a]ll relevant evidence is admissible." Va. R. Evid. 2:402(a). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'"

---

[6] This assignment of error is quoted verbatim from the appellant's opening brief, but capitalization has been removed.

*Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016) (alteration in original) (quoting *Virginia Elec. & Power Co. v. Dungee*, 258 Va. 235, 260 (1999)). Furthermore:

> Opinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness' perceptions. Lay opinion may relate to any matter . . . . However, lay witness testimony that amounts only to an opinion of law is inadmissible.

Va. R. Evid. 2:701. "Our Supreme Court has clarified that Rule 2:701 does not allow lay opinion testimony that is 'not based on the perception of the witness or on the witness's personal knowledge.'" *Murray v. Commonwealth*, 71 Va. App. 449, 457 (2020) (quoting *Martin v. Lahti*, 295 Va. 77, 85 (2018)).

Here, the duffel bag contained a black box with "a bunch of antennas" protruding from it and "a bunch of knobs." Investigator Nagy testified that in his training and experience the item was a "jammer device" and explained that it "can be used to take cellphones offline, block their signal, to block Wi-Fi signals, alarm systems, [and] GPS." Investigator Nagy's testimony was relevant to show that Courtney possessed the "jammer device" in an attempt to break into the jewelry store undetected. The mere fact that it was not hooked up to Courtney's earpiece or turned on when the police found it does not alter the relevance of Investigator Nagy's testimony. Investigator Nagy explained, after conducting his investigation, what the item was and, more importantly, its use. Because Investigator Nagy's testimony was based on his training, experience, and investigation into the facts and was useful in deciding whether Courtney possessed burglarious tools, Nagy's testimony was relevant and admissible.

Contrary to Courtney's assertion, Investigator Nagy did not testify that he had no idea what the jammer device *was*. Rather, he testified that because he had no "prior experience with these types of devices," he was unaware of any lawful reason for using one. When the Commonwealth asked him to speculate if a jammer device could be used for "legitimate purposes," the trial court

- 10 -

sustained Courtney's objection and held that Investigator Nagy's testimony would be limited to the fact that a jammer device is used to block signals from cell phones, alarms, Wi-Fi, and GPS. Therefore, we cannot say that the trial court abused its discretion by admitting Investigator Nagy's testimony about the jammer device.

Even if the trial court erred, any error would be harmless because even without the jamming device, the evidence sufficiently proved that Courtney conspired with another to burglarize the nail salon and the jewelry store and that he used the sledgehammer to do it. Under Virginia's harmless error statute, "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Proffitt*, 292 Va. at 641 (alteration in original) (quoting Code § 8.01-678). Therefore, we do not disturb the trial court's judgment.

### III. CONCLUSION

For all of the foregoing reasons, we affirm each of Courtney's convictions by the trial court.

*Affirmed.*